STATE OF MISSOURI at the relation of THE NATIONAL REFINING COM-
PANY, a Corporation, Relator, v. THOMAS J. SEEHORN, Judge of
the Circuit Court· of Jackson County at Kansas City, Division
No. 3.—127 S. W. (2d) 418.

Division Two, April 20, 1939.

548

*Ringolsky, Boatright & Jacobs* for relator.

*Luther W. Adamson* and *Martin J. O'Donnell* for respondent.

COOLEY, C.—This is an original proceeding in prohibition in this court, whereby relator; National Refining Company, a corporation, seeks to prohibit respondent, Honorable Thomas J. Seehorn, Judge of the Circuit Court of Jackson County, at Kansas City, presiding in Division 3 of said court, from proceeding with the trial of a cause pending in said court, growing out of the following facts, which appear from the pleadings:

August 8, 1934, A. H. Fawkes, as plaintiff, filed suit against relator and two others, seeking to recover $25,000 damages for the loss of the comfort, society and services of his wife, and medical expenses incurred on her behalf. His petition alleged that on May 9, 1931, his wife, Bessie H. Fawkes, suffered personal injuries due to certain negligence of the named defendants and that as a result of her injuries he had been compelled to incur expense for medical and surgical attentions to her and had been deprived of her comfort, society and services, by all of which he had been damaged in the sum sued for. Before that suit was brought to trial, and on March 21, 1936, said A. H. Fawkes died. His son, Clio H. Fawkes, was appointed administrator of his estate. For convenience and brevity we shall refer to said A. H. Fawkes as plaintiff and to said Clio H. Fawkes as administrator. The administrator filed in the circuit court suggestion of the death of the plaintiff and motion to revive the cause in the name of the administrator. The circuit court ordered that the cause be so revived and proceeded with. The administrator then filed a petition setting forth the death of the plaintiff, the appointment of the administrator and revival of the cause, etc., and alleging as cause of action the facts alleged in plaintiff's original petition. Relator, defendant in said action, attacked said petition by demurrer and motion to strike on the grounds that the administrator is not authorized in law to prosecute the alleged cause of action of the deceased plaintiff and that said cause of action, if any, abated or died with the plaintiff and did not survive to and cannot be prosecuted by his administrator. The court overruled said demurrer and motion and required the defendants to answer, and will proceed with the hearing of said cause, so revived, unless prohibited by this court.

The first question in the proceeding before us is, does plaintiff's cause of action survive his death so as to be maintainable by his administrator? Relator says no, because it did not so survive at common law and we have no statute providing for such survival. Respondent says it survives and may be prosecuted by the administrator under Sections 97, 98 and 99, Revised Statutes 1929 (Mo. Stat. Ann., pp. 61-63), which read:

"Sec. 97. *Prosecute and defend actions commenced by or against decedent.*

"Executors and administrators shall prosecute and defend all actions commenced by or against the deceased, at the time of his death, and which might have been prosecuted or maintained by or against such executor or administrator."

"Sec. 98. *Actions for torts by and against administrators, what may be maintained.*

"For all wrongs done to property rights, or interest of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or, after his death, by his executor or administrator, against such wrongdoer, and, after his death, against his executor or administrator, in the same manner and with like effect, in all respects, as actions founded upon contract."

"Sec. 99. *Last section not to extend to what actions.*

"The preceding section shall not extend to actions for slander, libel, assault and battery or false imprisonment, nor to actions on the case for injuries to the person of the plaintiff, or to the person of the testator or intestate of any executor or administrator."

 At common law actions based on tort died with the death of either the wronged or the wrongdoer. The common-law rule prevails in Missouri except so far as it has been changed or modified by statute. [Sec. 645, R. S. 1929, Mo. Stat. Ann., p. 4894; Toomey v. Wells, 218 Mo. App. 534, 280 S. W. 441; Elliott v. Kansas City, 210 Mo. 576, 109 S. W. 627; Bates v. Sylvester, 205 Mo. 493, 104 S. W. 73; Burg v. Knox, 334 Mo. 329, 67 S. W. (2d) 96; State ex rel. Thomas v. Daues et al., 314 Mo. 13, 283 S. W. 51, 56 (V); Jordan v. St. Joseph Railway, Light, Heat & Power Co., 335 Mo. 319, 73 S. W. (2d) 205, 211 (18-20); Gilkeson, Admr., v. Mo. Pac. Ry. Co., 222 Mo. 173, 121 S. W. 138; Freie v. St. L.-S. F. Ry. Co., 283 Mo. 457, 222 S. W. 824; Cummins v. K. C. Pub. Serv. Co., 334 Mo. 672, 66 S. W. (2d) 920; 1 C. J., p. 203, sec. 385, p. 195, sec. 363; 1 Amer. Jur., p. 73, secs. 87, 88.] An action by a husband for damages for loss of comfort, society and services of his wife because of a negligent injury inflicted upon her by another is an action founded on tort, and at common law such action or right of action did not survive the death of the husband. [1 C. J., p. 203, sec. 385; Freie v. St. L.-S. F. Ry. Co., supra; Toomey v. Wells, supra.]

 Section 97, Revised Statutes 1929, supra, provides that executors and administrators shall prosecute and defend actions commenced by or against the deceased which might have been prosecuted or maintained by or against such executor or administrator. As forecast above, respondent contends that plaintiff's cause of action survived his death, under Sections 98 and 99, supra, and might have been instituted and prosecuted by his administrator, and, having been instituted by plaintiff before his death, may be revived and maintained by his administrator. In this connection it may be appropriate to refer to Section 3280, Revised Statutes 1929 (Mo. Stat. Ann., p.

3398), which provides that causes of action upon which suit has been brought by the injured party for personal injuries, other than those resulting in death, "whether such injuries be to the health or to the person of the injured party," shall not abate by reason of his death nor by reason of the death of the person against whom the cause of action accrued, but shall survive to the personal representative of the injured party or against the legal representative of the wrong-doer, as the case may be. In Toomey v. Wells, supra, it was held, and we think correctly held, that said Section 3280 has reference to "personal injuries" to the health or person of the injured party, but does not apply where, as in that case and as here, the suit was brought by the husband of the injured wife because he suffered the loss of her comfort, society and services. "It does not apply to one who has sustained indirect or consequential damages." We must therefore look to Sections 98 and 99, supra, for statutory change of the common law rule as to survival of actions such as that here involved. [Toomey v. Wells, supra.]

Those sections of the statute are part of Chapter 1, Revised Statutes 1929, entitled "Administration." They have been in force, in the same form (except for section numbering), since their original enactment in 1835 (See Freie v. St. L.-S. F. Ry. Co., supra, for legislative history of those sections). In said Section 98, as published in the statute books prior to 1929, there appeared a comma between "property" and "rights" in the first line, thus: "For all wrongs done to property, rights or interest of another," etc. In Bates v. Sylvester, supra, it was held that the language " 'property, rights or interest' " meant and should be read " 'property-rights or interest,' " and that such was the construction placed upon said language in Vawter v. Mo. Pac. Ry. Co., 84 Mo. 679, 686 (decided in 1884). That construction of said section has been adhered to and followed by this court ever since.

The Bates case was a suit by a widow for the negligent killing of her husband. After suit was filed the alleged tort-feasor died and it was sought to revive and prosecute the action against his administrator. The court held that could not be done, since at common law actions in tort do not survive the death of either the wronged or. the wrongdoer and that Section 96, Revised Statutes 1899 (now Sec. 98, R. S. 1929) "is confined to action for torts for wrongs done to property rights or interests of another and not to personal torts or actions on the case for injuries to the person."

Said Sections 98 and 99 (then Secs. 96 and 97, R. S. 1899) again came under review and were considered at length by this court en banc in Gilkeson v. Mo. Pac. Ry. Co., supra. That was a suit for damages brought by the administrator of a minor, for the death of his parents, alleged to have been caused by the negligence of the defendant. The minor had survived his parents. The court, after

holding that under the Damage Act, or "wrongful death" statute, the administrator could not maintain the action (for reasons not here pertinent), considered whether the cause of action survived under (now) Sections 98 and 99, and held that it did not. The court approved the holding of Bates v. Sylvester that Section 98 referred only to actions for wrongs done to property rights, and held that the wrongful killing of the deceased minor's parents was not a wrong done to his property or to his property rights. The argument had been advanced that the minor had a legal right to have his parents care for, support and educate him and that the deprivation of that right was a wrong done to his property rights within the meaning of Section 96 (now 98). The court denied that contention. *Arguendo* and by way of illustration the court said, in effect (222 Mo. 197, 121 S. W. 138), that while a husband owes to his wife care, society and support, yet deprivation thereof by the unlawful killing of her husband would be a wrong done to the wife's personal rights and not to her property rights, and would not survive to her administrator under present Section 98. The court pointed out that under certain sections of the Damage Act, as they then existed, a minor child, for the death of his parent, or a surviving husband or wife for the death of the wife or husband, caused by the wrongful act of another, would have a cause of action. Those provisions of the Damage Act originated in 1855 (See Freie v. Ry. Co., supra), and have since been amended, extending the right of maintaining the action to persons and representatives not originally included. They gave a new cause of action or right of action, which did not exist at the common law. [Cummins v. K. C. Pub. Serv. Co., supra.] They are not involved in the case before us. We mention them to make more clear the quotation, infra, because in the Gilkeson case it was urged that the child had suffered a pecuniary loss in the death of his parent in the nature of deprivation of a property right. The court, in the Gilkesson case, said that "some respectable courts (whose decisions are reviewed) sustain the contention . . . that the right of a minor to the care, support and maintenance of their parents is a property right . . ." and that when the minor dies before the damages are collected his cause of action will survive under statutory provisions similar to our Sections 98 and 99. Answering that contention the court said, 222 Mo. l. c. 199, 121 S. W. l. c. 146:

"The error learned counsel for respondent has fallen into, as have also the able courts whose opinions he relies upon in support of his contention in this case, consists in confusing the *pecuniary loss sustained by a minor child, caused by the wrongful death of his or her father or mother, with the damages done to his or her property or property interests by a wrongful act of another.* While the child has sustained a pecuniary loss or damage in both cases, and is entitled to a recovery in each, yet the injury to the one is not the same as

the injury to the other—the former is an injury to his personal rights, and the latter is an injury to property rights; nor is the measure of damages the same in each case, as before pointed out. This palpable error is the very corner stone upon which those courts which entertain different views from those entertained by this court base their entire argument in favor of the survival of such a cause of action under sections of their statute which are similar to Sections 96 and 97 of our statutes; and without that false basis upon which to rest, the opinions of those able courts would be totally destitute of every vestige of reason and plausibility to support them.''

The Gilkeson case was approved and quoted from by this court en banc in Cummins v. K. C. Pub. Serv. Co., supra.

If deprivation of the care, support and maintenance to which a minor is legally entitled from his parent, or deprivation of a wife's right to the society and support of her husband, is not a wrong done to property rights, within the meaning of Section 98, supra, as held in the Gilkeson case, neither can it be a wrong done to a husband's property rights or interest when he is deprived of the comfort, society and services of his wife because of a personal injury to her. It was so held in Toomey v. Wells, supra, also in Freie v. Ry. Co., supra. In the Toomey case the court did not definitely express its opinion as to medical expenses (of which more anon). The Freie case was a suit by the administrator of one Herman Freie, deceased. The petition alleged that Herman's wife had been killed through the negligence (detailed) of the defendant; that said Herman had been injured in the same accident, but survived his wife some time; that said Herman, by the defendant's wrongful act (in killing his wife), was deprived of the ''society, comfort, aid, companionship, services and consortium'' of his said wife, and of his beneficial interest as her husband in her estate, and that ''because of said negligence and injuries, various items of expense (detailed) were incurred by said Herman Freie, including medical and nursing expense, and the funeral expenses of his said wife.'' The trial court sustained a demurrer to the petition and that action was affirmed by this court. From the brief statement of the facts in the opinion it does not clearly appear whether the medical and nursing expenses referred to in the petition were alleged to have been rendered to the wife or to the husband. But from the petition set out in the abstract of record, found in the files of the case in the office of our clerk, we learn that said petition alleged that the wife ''lingered for some time and died as a result of said injuries;'' that it was necessary that both wife and husband be taken immediately to a hospital and that hospital facilities, doctors, nurses, medicines, etc., be procured for *both* ''before their death,'' which was done, and ''large expenses'' incurred therefor, for which the husband and his estate became liable, and which, as well as the other elements of damage above mentioned, his administrator sought to re-

cover. It thus appears that part, at least, of the medical expenses sued for were expenses alleged to have been incurred on behalf of the wife. From the briefs of counsel, also found in our files, we learn further that one of the points made—and stressed—by the appellant administrator was that "The property rights of the intestate (husband) to compensation for expenditures for medical treatment, nursing and funeral expenses . . . also survived and were recoverable by plaintiff, as his administrator." So that it can hardly be said that this court, in holding that the husband's cause of action did not survive his death, overlooked the element of damage as to expenses incurred on behalf of the wife. This court held that under the Damage Act the surviving husband could have maintained an action for the death of his wife, but that said act gave no right of action to his administrator, and that the cause of action which he had under the Damage Act did not survive to his administrator under present Sections 98 and 99, or under those sections and the Damage Act construed together. The Freie case was approvingly cited and quoted from in the Cummins case, supra.

It is argued that even if the husband's cause of action does not survive to his administrator as to loss of comfort, society and services of his wife, it does as to expenses incurred by him in her behalf on account of her injuries. Those expenses were incident to the wife's injuries and occasioned thereby. They constituted an element, but only an element and not the main element, of the husband's cause of action. From the injury to the wife two causes of action arose,—one to the wife for her personal injury and one to the husband for damages to him because of loss of her comfort, society and services and which included also the right to reimbursement for expenses necessarily incurred by him in attempting to cure the wife. But we think the husband had but *one* cause of action though several different elements might be taken into account in determining the amount of his damage. [See Young, Admr., v. Ostrander, 270 Ill. App. 368.] All the elements of his damage resulted, as to him, incidentally or consequentially because of the injury to his wife. If the injury to his wife, depriving him of—*inter alia*—her *services,* something of pecuniary value, was not a wrong done to his property right, under Section 98, supra, it is difficult to see how the medical and surgical expenses consequentially caused to him by her injury could be treated as of themselves constituting a wrong done to his property rights within the purview of that section. So to hold would be to hold, in effect, that *two* causes of action accrued to the husband,—one for damage for the loss of comfort, society and services of the wife, which would not survive, and one for expenses incurred in her behalf, which would survive. We do not believe the husband's cause of action is thus separable for the purpose of survival. Toomey v. Wells, supra, did not definitely decide this precise question. In that

case the suit was, as in the instant case, for loss of comfort, society and services of the injured wife and medical expenses incurred in her behalf by the husband. The plaintiff (administrator) had recovered a verdict for $1,986, which included $486 for expenses incurred by the husband for the wife, leaving $1,500 for loss of comfort, society and services. The trial court concluded that as to the loss of comfort, society and services the cause of action had abated upon the husband's death (he having died after filing suit and the cause having been revived and proceeded with in the name of his administrator), and ordered the plaintiff to remit $1,500 of the verdict, which the plaintiff declined to do and the trial court thereupon sustained the defendant's motion for new trial. The appeal was by the plaintiff from the order granting the new trial. The appellate court in its opinion said that the one question before it was ''whether the trial court correctly held, in granting a new trial, that the claim for damages based upon loss of society and personal services does not survive the husband's death for the purpose of enriching the husband's estate.'' The court held it did not survive and sustained the trial court's action in granting a new trial, but we do not think the court meant to rule definitely on whether or not a right of action to recover for the medical expenses survived. In the Freie case, supra, we think this court did, in effect, rule that it does not survive.

In 1 Corpus Juris, page 197, section 367, it is said that ''where an action or cause of action for personal injuries does not otherwise survive, it will not survive because of a claim for loss of time, medical expenses, etc., or other merely indirect and incidental damages to property or estate.'' [To same effect, 1 C. J. S., sec. 144, p. 199.]

It is argued for respondent that a husband has a legal right to the society, comfort and services of his wife and that his loss thereof, caused by the wrongful act of another ''is protected'' by Section 10, Article II, of our State Constitution, reading: ''The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay;'' and, if we understand counsels' argument, that Sections 98 and 99, construed as we have above construed them (and as they have been heretofore construed, as above shown), would be void as in conflict with said constitutional provision. Counsel say, ''Even a statute enacting the alleged common law rule that all rights of action based on torts shall die with the person is void because in conflict with said provision of the Constitution.'' And it is further argued that said rule was not and is not really a part of the common law as adopted in this State because by statute (now Sec. 645, R. S. 1929, supra), we adopted as the law of this State ''The common law of England and all statutes and acts of Parliament made prior to the fourth year of the reign of James the First, and which are of a general nature, not

local to that kingdom, which common law and statutes are not repugnant to or inconsistent with the Constitution of the United States, the Constitution of this State, or the statute laws in force for the time being, . . .;" that the alleged common law rule was founded originally on the idea that tort actions, as for wrongful death, were basically for vengeance rather than for compensation, and that such rule and the basic thought and reason on which it was founded and out of which it grew are not in harmony with the thought, the spirit and the needs of our people and of our times and conditions, and are repugnant to and inconsistent with the meaning and purpose of our Constitution and the principles of right and justice which it was designed to guarantee. Counsel present a learned and elaborate brief and argument in support of their contention. Perhaps we but feebly and inaccurately indicate the general thought intended to be expressed. We shall not take space to elaborate or to follow the argument in detail. The rule that tort actions did not, at the common law, survive the death of the wronged or the wrongdoer has been so long recognized and so often stated by this court, as well as courts in other jurisdictions, that further citation of authorities would be superfluous. We think there can be no doubt but that it was understood to be a part of the common law by the framers of our Constitution when that instrument was adopted and by our Legislature when, in an early day in our State history, it adopted the common law, except as it had been or might be changed by statute, as the law of this State. We do not believe Section 10, Article II, of the Constitution was intended to create, of its own vigor, any new rights or remedies which were not in existence or recognized at the time of its adoption. We think it was designed to protect the citizen in the use of the courts to enforce such rights and remedies as were recognized by the law at the time of its adoption and as might thereafter be created by law.

Sections 98 and 99, supra, were enacted more than one hundred years ago. They have never been construed to change the common law rule so as to permit the maintenance of an action such as this by an administrator of the person to whom the cause of action had accrued. Contra, as we have pointed out, in Bates v, Sylvester, supra, and, as the court there said, in earlier decisions, said Section 98 was construed to apply only to wrongs done to property rights, and in Gilkeson v. Railroad, supra, where the question was thoroughly considered and numerous decisions of this and other courts were reviewed, it was made clear that an action such as the one here in question does not, under said section, survive the death of the wronged person. The General Assembly has been in session many times since those decisions were published and has not seen fit to change the law, as thus interpreted, so as to confer upon an administrator the right to maintain an action under the circumstances here involved. [See Freie case, supra.] It is our conclusion that plaintiff's cause of action abated

upon his death and that the action cannot be revived or maintained by his administrator.

The question next to be considered is whether prohibition may be invoked. We think so. The facts sufficiently appear from the pleadings and on the undisputed and indisputable facts it is clear that the administrator not only has not stated but *cannot state* a cause of action, because the cause of action which the original plaintiff, the decedent, had,—the only cause of action the administrator on any theory could claim to have—has ceased to exist. The administrator has no right or authority to proceed in the matter. He, as administrator, never did have authority to institute or prosecute the action.

The writ of prohibition reaches acting in excess of jurisdiction, as well as acting where there is no jurisdiction. [Dahlberg v. Fisse, 328 Mo. 213, 40 S. W. (2d) 606.] In State ex rel. Johnson v. Sevier, 339 Mo. 483, 98 S. W. (2d) 677, Greb X-Ray Company, partners, sought mandamus to compel the State Purchasing Agent, Johnson, to rescind a certain contract he had awarded to another and to award the contract to them. The circuit court issued its alternative writ of mandamus, whereupon Johnson and the successful bidder sought our writ of prohibition to prohibit the circuit court from taking further action in said mandamus proceeding. Our provisional rule issued, to which return was made and on final hearing the rule was made absolute. It was contended that if the petition failed to state a cause of action that would be ground for demurrer in the circuit court but not ground for prohibition. Answering that contention the court said, 339 Mo. l. c. 490, 98 S. W. (2d) l. c. 680.

"The rule governing the contention made may be thus stated: If it can be determined from the petition that the pleader attempted to state a case belonging to a class of which the circuit court has general jurisdiction, but failed to do so, the petition would be subject to demurrer or amendment in the circuit court, and prohibition would not lie. [State ex rel. Leake v. Harris, Circuit Judge, et al., 334 Mo. 713, 67 S. W. (2d) 981, 982.] But, where a petition reveals that the pleader has not stated, and cannot state, a cause of action of which the circuit court would have jurisdiction, then prohibition will lie. These facts must be determined from the allegations of the petition. It will not do to say in the instant case that prohibition will not lie because the circuit court has general jurisdiction of mandamus actions and therefore, had jurisdiction to say whether or not the petition for mandamus stated facts sufficient to authorize the issuance of the alternative writ."

In Dahlberg v. Fisse, supra, prohibition was granted against a referee, exercising judicial power, who was undertaking to require an accounting in a suit in which, under the pleadings, no accounting could be had. It was held that the order of the referee ordering the

accounting was in excess of jurisdiction and that prohibition was a proper remedy. The court said that "while Dahlberg would have the right of appeal at the conclusion of the trial, yet appeal would not prevent the expense, vexation and annoyance of making the statement and going through a trial before the referee of an action which is not alleged against him. An appeal would not, therefore, be an adequate remedy."

The provisional rule in prohibition issued herein should be made absolute. It is so ordered. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The forgoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.