Carl FUST and Rita Fust, Appellants,

v.

ATTORNEY GENERAL FOR THE
STATE OF MISSOURI,
Respondent.

No. 79416.

Supreme Court of Missouri,
En Banc.

June 17, 1997.

426

Alan G. Kimbrell, Richard C. Witzel, David A. Dimmitt, St. Louis, for Appellants.

Jeremiah W. (Jay) Nixon, Attorney General, John R. Munich, Deputy Attorney General, Gary L. Gardner, Assistant Attorney General, Jefferson City, for Respondent.

HOLSTEIN, Chief Justice.

Carl and Rita Fust are judgment creditors. They were awarded $330,000 in punitive damages in a malicious prosecution action in 1994. This judgment was affirmed on appeal. *Fust v. Francois,* 913 S.W.2d 38 (Mo. App.1995). Here, the Fusts seek a declaratory judgment that sec. 537.675 [1], enacted as part of House Bill 700, Laws of 1987, p. 545, et seq. (HB 700), is unconstitutional. That section provides that 50% of any punitive damages judgment is deemed rendered in favor of the State of Missouri. The Circuit Court of Cole County found the statute constitutional. This Court has jurisdiction of the appeal. *Mo. Const. art. V, sec. 3.* The judgment of the trial court is affirmed.

## I.

Missouri Constitution art. III, sec. 23, states: "No bill shall contain more than one subject which shall be clearly expressed in its title." The title of HB 700 states that it was enacted "to repeal sections [thereafter listed], and to enact in lieu thereof fifty-one new sections for the purpose of assuring just com-

1. All references to statutes are to RSMo 1994,

pensation for certain person's damages...." Section 40 of HB 700, codified at sec. 537.675, establishes the "tort victims' compensation fund." It provides:

1. There is created the "Tort Victims' Compensation Fund". Unexpended moneys in the fund shall not lapse at the end of the biennium as provided in section 33.080, RSMo.

2. Fifty percent of any final judgment awarding punitive damages after the deduction of attorneys' fees and expenses shall be deemed rendered in favor of the state of Missouri. The circuit clerks shall notify the attorney general of any final judgment awarding punitive damages rendered in their circuits. With respect to such fifty percent, the attorney general shall collect upon such judgment and may execute or make settlements with respect thereto as he deems appropriate for deposit into the fund.

3. The state of Missouri shall have no interest in or right to intervene at any stage of any judicial proceeding under this section.

4. No disbursement shall be made from the tort victims' compensation fund until procedures for disbursement are established by further action of the general assembly.

The Fusts make a two-pronged constitutional attack on HB 700 under article III, sec. 23, claiming that it contains more than one subject and that the subject matter of sec. 40 was not contained in the bill's title.

■■■ The Fusts have the burden of proving the statute's unconstitutionality. *Westin Crown Plaza Hotel Co. v. King,* 664 S.W.2d 2, 5 (Mo. banc 1984). Their burden here is substantial.

Attacks against legislative action founded on constitutionally imposed procedural limitations are not favored.... [T]his Court interprets procedural limitations liberally and will uphold the constitutionality of a statute against such an attack unless the act clearly and undoubtedly violates the constitutional limitation.

unless stated otherwise.

*Hammerschmidt v. Boone County,* 877 S.W.2d 98, 102 (Mo. banc 1994). The dispositive question in determining whether a bill contains more than one subject is "whether all provisions of the bill fairly relate to the same subject, have a natural connection therewith, or are incidents or means to accomplish its purpose." *Akin v. Dir. of Revenue,* 934 S.W.2d 295, 301 (Mo. banc 1996).

Appellants argue that HB 700 could not have one subject because this bill has numerous components: provisions relating to regulation of liability insurance carriers; provisions modifying tort liability for manufacturers; a provision relating to pre-judgment interest; provisions relating to the procedure in the trials involving cases of punitive damages; and a provision that establishes the tort victims' compensation fund.

■ However, the single subject test is *not whether individual provisions of a bill relate to each other.* The constitutional test focuses on the subject set out in the title. We judge whether a particular provision violates the single subject rule by examining the individual provision under consideration to determine if it fairly relates to the subject described in the title of the bill, has a natural connection to the subject, or is a means to accomplish the law's purpose.

■ All sections of this particular bill purport to do the same thing—promote compensation for certain tort victims. Unquestionably, this object may be accomplished by multiple means. First, it may be accomplished by regulating the liability insurance industry. Second, the purpose may be accomplished by the statutory modification of common law rules involving tort liability. Third, it may be accomplished by creating a fund for tort victims who otherwise would be uncompensated.

At no point in appellants' argument do they suggest that the regulation of the State's liability insurance industry, modification of our tort law, and creation of a fund for uncompensated tort victims are unrelated to assuring just compensation for a certain person's damages. Indeed, it is difficult to argue that the three classes of statutes are not closely related to just compensation of individuals who sustain damages to their property or person. The topics are not only naturally and reasonably related to the bill's stated subject but are inextricably intertwined as elements of our tort liability system.

There is no claim here that this bill was significantly amended during its progress through the legislature so as to change its original purpose. Neither will this Court speculate that some legislators were unfamiliar with the purpose or details of the bill or that news media would have had difficulty summarizing the bill because of its technical detail. The dispositive question is whether all provisions fairly relate to the same subject expressed in the title of the bill. It is sufficient to say that appellants have not sustained their burden of proving the unconstitutionality of HB 700 on the basis that it contains more than one subject.

### A.

■ Article III, sec. 23 also requires that the subject be "clearly expressed" in a bill's title. This provision may be violated in two ways. First, the subject may be so general or amorphous as to violate the single subject requirement. *See Hammerschmidt,* 877 S.W.2d at 102 n. 3. Second, the subject may be so restrictive that a particular provision is rejected because it falls outside the scope of the subject. *See Carmack v. Dir., Missouri Dept. of Agriculture,* 945 S.W.2d 956 (Mo. banc 1997) (bill on "economic development" cannot include livestock indemnification provisions). The point relied on and argument focus on a claim that the title is too restrictive to permit a provision touching on punitive damages.

■ The essence of the Fusts' argument is that because the words "punitive damages" and "tort" do not appear in the title and the words "just compensation" do appear in the title, the title of HB 700 is too restrictive to permit any particular provision touching on punitive damages for tort. As with other constitutional challenges, the one asserting the unconstitutionality of the statute has the burden of showing the constitutional procedural limitation has "clearly and undoubtedly" been contravened. *Carmack,* 945 S.W.2d

at 959; *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 39 (Mo. banc 1982).

The "clear title" provision, like the "single subject" restriction, was designed to prevent fraudulent, misleading, and improper legislation, by providing that the title should indicate in a general way the kind of legislation that was being enacted. *Vice v. City of Kirksville*, 280 Mo. 348, 358, 217 S.W. 77, 79 (1920). If the title of a bill contains a particular limitation or restriction, a provision that goes beyond the limitation in the title is invalid because such title affirmatively misleads the reader. *Hunt v. Armour & Co.*, 345 Mo. 677, 679–80, 136 S.W.2d 312, 314 (1940).

Appellants assert that because certain sections involving insurance, interest, or pleadings were repealed, and "in lieu thereof," fifty-one new provisions were enacted, that the subject of the bill is limited to insurance, interest and pleadings. This argument would require us to ignore the stated purpose of the enactment of the fifty-one new sections: to assure "just compensation for certain person's damages." The words "in lieu thereof" do not restrict. They simply inform the reader what is being substituted for the repealed provisions and introduce a statement as to why the substitution is being made.

A reasonable person reading the title would understand that the bill relates to "certain persons" who have sustained "damages." Nothing in the title restricts the subject to persons who sustained actual but not punitive damages. The title of the bill also puts the reasonable reader on notice that the act relates to "assuring just compensation" for damages. But the words "just compensation" are not so restrictive a term of art as to mean the bill excludes reference to tort cases where the plaintiff seeks both compensatory and punitive damages, as suggested by appellants.

It is true that assuring payment of compensatory damages is the purpose of the bill. To that end, sec. 537.675 creates a tort victims' compensation fund. It is hard to imagine a provision more closely and naturally related to the topic of assuring just compensation for damages to persons than one creating a fund to pay otherwise uncompensated tort victims. Merely because that fund is generated by money collected in cases where plaintiffs obtained a judgment for more than was necessary to justly compensate them for their injuries does not mean the provision is unrelated to "assuring just compensation for certain person's damages." It is sufficient that the funding mechanism is reasonably necessary to accomplish the purpose of the bill.

The title need not describe every detail contained in the bill. The title to the act is valid if it indicates the general contents of the act, and mere generality of title will not prevent the act from being valid unless it is so obscure or amorphous as to tend to cover up the contents of the act. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 39 (Mo. banc 1982), *appeal dismissed*, 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). The argument here does not attack the title as being too general, per se. Thus we do not address the issue. *See Carmack*, 945 S.W.2d at 961. In sum, appellants have failed to sustain their burden of establishing that the title contains a restriction or limitation that would affirmatively mislead either a legislator or a member of the public regarding the content of the bill.

## II.

The Fusts argue that the State unconstitutionally attempted to grant public money to private persons, in contravention of Missouri Constitution article III, sec. 38(a). Subject to certain exceptions, that section provides, "The general assembly shall have no power to grant public money or property, or lend or authorize the lending of public credit, to any private person, association or corporation."

If a grant serves a public purpose, then it does not violate the constitutional prohibition against granting public monies to private entities. *Menorah Medical Ctr. v. Health & Educ. Facilities Auth.*, 584 S.W.2d 73, 78 (Mo. banc 1979). "The primary object of a public expenditure is to subserve a public municipal purpose." *Curchin v. Missouri Indus. Dev. Bd.*, 722 S.W.2d 930, 934 (Mo.

banc 1987). The constitutionality of the grant depends on the ultimate use, purpose and object for which the fund is raised. *Id.* The determination of what constitutes a public purpose is primarily for the legislative department, and it will not be overturned unless it is found to be arbitrary and unreasonable. *Menorah,* 584 S.W.2d at 79.

The elasticity of the words "public purpose" is demonstrated by the case of *Americans United v. Rogers,* 538 S.W.2d 711 (Mo. banc), *cert. denied,* 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976). There, a law requiring tuition grants to be directly disbursed to college students was upheld because it served a public purpose, namely, education. *Id.* at 719. Here, the public purpose of sec. 537.675 is to create a fund to compensate certain tort victims who might otherwise be forced to rely on public assistance, while other tort victims, particularly those receiving large punitive damages awards, receive more than is necessary to pay for their injury. Reduction of uncompensated tort victims requiring public assistance and limitations of windfall recoveries to other tort victims are valid public purposes.

### III.

The Fusts assert that sec. 537.675.2 directs money received by the State to go into a fund other than "the treasury" and authorizes its distribution other than by appropriation, in violation of article III, sec. 3, of the Missouri Constitution.

Appellants presented no evidence that the attorney general has not been depositing all monies collected pursuant to sec. 537.675.2 into the state treasury. Appellants' brief seems to concede the accuracy of the attorney general's statement in argument before the trial court that "moneys collected under the statute are deposited into a fund of the state treasury." The statute does not specifically state whether the monies collected are or are not to be deposited in the state treasury.

The constitution does not specifically prohibit the legislature from creating special funds within the treasury. Indeed, the constitution requires certain special funds. For example, the constitution mandates a fund known as the "Cash Operating Reserve Fund." *Mo. Const. art. IV, sec. 27(a).* Absent a prohibition, the general assembly's legislative power is plenary. *Akin,* 934 S.W.2d at 299. No prohibition is cited or found preventing the legislature from requiring money from a particular source to be put into a particular fund. Indeed, the legislature has exercised that power in several respects. *See sec. 33.285* (creating the Budget Stabilization Fund), *sec. 33.543* (creating the General Revenue Fund), *sec. 33.563* (creating the State Institutions Gift Trust Fund), and *sec. 33.564* (creating the International Trade Show Revolving Fund). The legislature has the authority to create special funds within the state treasury without violating article III, sec. 3.

The Fusts are correct in arguing that an appropriation is necessary for the expenditure of any money in the tort victims' compensation fund. However, the legislature has yet to appropriate such funds, and the attorney general is making no threat to expend such funds without an appropriation. Until that occurs, a claim regarding expenditures of state funds for which there has been no appropriation is premature.

### IV.

Appellants argue that sec. 537.675.2 violates the constitutional separation of powers prescribed in article II, sec. 1, and article V, sec. 1, because the statute deprives the courts of the power to enforce judgments as they are rendered. In related arguments, the Fusts argue that sec. 537.675.2 deprives them of their remedy for malicious prosecution and the enjoyment of the gains of their own industry, in violation of Missouri Constitution article I, secs. 2 and 14. It is also argued that sec. 537.675.2 violates due process under the state and federal constitutions.

Nothing in the text of the statute at hand interferes with the judicial function. Rather, the statute is a limitation on a common law cause of action for punitive damages. Placing reasonable limitations on common law causes of action is within the discretion of the legislative branch and does

not invade the judicial function. *See Simpson v. Kilcher,* 749 S.W.2d 386, 391 (Mo. banc 1988). There is no violation of the separation of powers provisions of article II, sec. 1, or article V, sec. 1.

[19] For essentially the same reason, the "certain remedy" provision of Missouri Constitution article I, sec. 14, was not violated by the adoption of sec. 537.675.2. The statutory modification of the substantive common law limiting the amount of noneconomic damages that may be recovered does not offend the "certain remedy" requirement. The only authority cited to the contrary is *State ex rel. National Refining Co. v. Seehorn,* 344 Mo. 547, 127 S.W.2d 418 (1939). There, referring to the "certain remedy" provision, the Court stated, "[I]t was designed to protect the citizen in the use of the courts to enforce such rights and remedies as were recognized by the law at the time of its adoption and as might thereafter be created by law." *Id.* 127 S.W.2d at 424.

However, the issue in *Seehorn* was quite different than that raised here. The question there was whether the "certain remedy" provision **created** any new causes of action not recognized by the common law. The question here is whether the "certain remedy" provision forbids modification of a common law cause of action. That question has been answered in the negative on at least two recent occasions. *Wheeler v. Briggs,* 941 S.W.2d 512, 514–15 (Mo. banc 1997); *Adams v. Children's Mercy Hosp.,* 832 S.W.2d 898, 905–06 (Mo. banc), *cert. denied,* 506 U.S. 991, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992). The claimed constitutional violation is again denied.

[20] The Fusts also claim that sec. 537.675.2 denies them their "natural right to . . . the enjoyment of the gains of their own industry." *Mo. Const. art. I, sec. 2.* No Missouri authority is cited in support of this claim. The Fusts' complete argument is that creating a fund by filing suit, assisting their attorneys, giving depositions, and testifying at trial constitutes "industry" within this constitutional protection. Assuming, without deciding, that this qualifies as "industry" subject to the constitutional protection, sec.

537.675 provides for reimbursement. This constitutional claim is also denied.

[21] The Fusts further claim that they are being denied a property right in their cause of action without due process of law. As noted in the above paragraph, when their claim for punitive damages for malicious prosecution arose, they acquired no more than a 50% interest in such judgment as would be entered for punitive damages. "A person has no property interest, no vested interest, in any rule of the common law. . . . The Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978). Further, this Court has specifically held that no vested right exists in a remedy for a tort yet to happen. *See Simpson,* 749 S.W.2d at 393–94.

In reaching this conclusion, this Court is mindful of the holding, relied on by the Fusts, of *Kirk v. Denver Publishing Co.,* 818 P.2d 262 (Colo.1991) (*en banc*). The Colorado statute under consideration there provided that the State was entitled to exemplary damages once they were collected. The Colorado Supreme Court noted that a judgment for exemplary damages qualifies as a property interest and the legislature could not take away such rights "once vested by a judgment." *Id.* at 268. The Missouri statute is somewhat different in that a Missouri plaintiff never acquires a proprietary interest in more than one-half of a punitive damages judgment. Moreover, this Court does not agree with the implicit conclusion in *Kirk* that a plaintiff has a greater property interest in a judgment upon a tort claim than the interest recognized by law when the claim accrued.

## V.

Appellants' final contention is that sec. 537.675.2 violates equal protection of the law and is a special law prohibited by article III, sec. 40 of the Missouri Constitution. Appellants argue that the statute unconstitutionally discriminates against plaintiffs who do not settle because sec. 537.675.2 only gives the State a share of punitive damages awarded

by final judgment. Appellants further argue that the statute unconstitutionally discriminates against plaintiffs whose actions are heard in state court. Appellants assert that plaintiffs in federal court under diversity jurisdiction "may keep the entirety of any punitive damages the jury gives them."

## A.

 Social and economic legislation like sec. 537.675.2 "that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose." *Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981). "Moreover, such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Id.* at 331–32, 101 S.Ct. at 2387. Appellants have not carried this heavy burden here.

 There are legitimate reasons for the legislature to distinguish between punitive damages awarded by court judgment and punitive damages recovered through settlement. The legislature may have sought to encourage settlement so as to avoid the burden litigation imposes on the parties and the judicial system. The legislature may also have determined that it would be easier for the State to collect its portion where the punitive damage award was part of a final judgment. The legislature may have sought to avoid enforcement difficulties that could arise from the State's attempt to collect a portion of a party's settlement, which may not accurately apportion compensatory and punitive damages. Clearly, these considerations provide a rational basis for the treatment of punitive damages awarded by court judgment in a manner different from punitive damages recovered through settlement.

As to appellants' contention that sec. 537.675.2 unconstitutionally discriminates against plaintiffs whose actions are heard in state court, the statute does not distinguish between state and federal litigants. By its terms, sec. 537.675.2 applies to all final judgments awarding punitive damages. Appellants cite to *Finley v. Empiregas, Inc.*, 28 F.3d 782 (8th Cir.1994), for the proposition that plaintiffs that are awarded punitive damages under Missouri tort law by federal court judgment may keep the entirety of any punitive damage award. But this was not the holding of *Finley*. In that case, the court determined that sec. 537.675.3 prohibited the State from prevailing on a motion under Federal Rule of Civil Procedure 69 to disburse a portion of a federal punitive damage award to the State. The Court of Appeals did not hold that the State's claim under the statute was wholly unenforceable. *Id.* at 785–86. Appellants cite no other authority for its assertion that the statute distinguishes between state and federal litigants. In this regard, appellants have failed to satisfy their burden of demonstrating that sec. 537.675 draws an improper classification.

## B.

 Appellants' argument that sec. 537.675 is a special law prohibited by article III, sec. 40 of the Missouri Constitution also lacks merit. A "special law" is a law that "includes less than all who are similarly situated ... but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Batek v. Curators of the Univ. of Missouri*, 920 S.W.2d 895, 899 (Mo. banc 1996) (omission in original). "In essence, the test for 'special legislation' under article III, sec. 40, of the Missouri Constitution, involves the same principles and considerations that are involved in determining whether the statute violates equal protection in a situation where neither a fundamental right nor suspect class is involved, i.e., where a rational basis test applies." *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 832 (Mo. banc 1991).

 As discussed in the equal protection analysis above, the legislature acted reasonably in drawing a distinction between tort plaintiffs who recover punitive damages through settlement and those who receive punitive damages by court judgment. Section 537.675 is not special legislation prohibited by article III, sec. 40.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

All concur.