**MISSOURI STATE MEDICAL ASSOCIATION, et al.,**
**Respondents,**

v.

**STATE of Missouri and Missouri Midwives Association, et al.,**
**Appellants.**

**No. SC 88783.**

Supreme Court of Missouri,
En Banc.

June 24, 2008.

Jeremiah W. (Jay) Nixon, Atty. Gen., John K. McManus, Asst. Atty. Gen., Thomas W. Rynard, James B. Deutsch, Marc H. Ellinger, Jane A. Smith, Jefferson City, for appellants.

Robert L. Hess, II, Harvey M. Tettlebaum, Jeffrey S. Howell, Jefferson City, for respondents.

Mary J. Browning, Jefferson City, for amicus curiae National Association of Certified Professional Midwives, Midwives Alliance of North America, Citizens for Midwifery, Birth Policy Coalition.

Leonard A. Nelson, Barat S. McClain, Chicago, IL, Johnny K. Richardson, Jefferson City, for amicus curiae American Medical Association.

STEPHEN N. LIMBAUGH, JR., Judge.

This is a suit to invalidate section 376.1753, RSMo Supp.2007, which legalizes the practice of "tocology," or midwifery. The trial court invalidated the statute on the grounds that the bill in which the statute was passed violated the original purpose, single subject and clear title requirements of article III, sections 21 and 23, of the Missouri Constitution. Because this appeal presents a challenge to the validity of a state statute, this Court has exclusive jurisdiction. Mo. Const. art. V, sec. 3. Having determined that plaintiffs have no standing to bring the suit, the judgment is reversed.

Section 376.1753 states as follows:

Notwithstanding any law to the contrary, any person who holds current ministerial or tocological certification by an organization accredited by the National Organization for Competency Assurance (NOCA) may provide services as defined in 42 U.S.C. 1396 r–6(b)(4)(E)(ii)(I) ["services related to pregnancy (including prenatal, delivery and post partum services)"].

The circumstances relating to the passage of House Bill 818, the bill that contained section 376.1753, are not in dispute. HB 818 was originally introduced in the House of Representatives on February 8, 2007. The title to the bill was "An act to repeal sections 376.961, 376.962, 376.964, and 376.989, RSMo, and to enact in lieu thereof nineteen new sections relating to portability and accessibility of health insurance." This original version of the bill made amendments and additions to existing statutory provisions within chapter 376 pertaining directly to the Missouri Health Insurance Pool and the Missouri Health Insurance Portability and Accountability Act. The bill then underwent two revisions in the House in which more amendments,

additions and repeals were made, all directly related to health insurance. Then on April 12, 2007, the bill passed the full House and was first read on the Senate floor that same day. As HB 818 worked its way through the Senate, more versions were submitted with more amendments, and the title was changed to state that the bill was repealing and enacting sections "relating to health insurance." On May 10, during the last week of the legislative session, HB 818 came up for debate on the floor of the Senate, and a substitute bill was offered, then withdrawn, and a second substitute bill was offered in which section 376.1753 was inserted for the first time. The second substitute bill then passed the Senate, and the final version of the bill's title stated that it was a bill:

> To repeal sections 103.085, 143.121, 143.782, 313.321, 376.426, 376.776, 376.960, 376.961, 376.964, 376.966, 376.986, 376.989, 379.930, 379.936, 379.938, 379.940, 379.942, 379.943, 379.944, and 379.952, RSMo, and to enact in lieu thereof forty-nine new sections *relating to health insurance*, with an effective date for certain sections.

(emphasis added). The following day, May 11, the second Senate substitute passed the House unchanged, and on June 1, the governor signed the bill into law.

The plaintiffs are Missouri State Medical Association, the Missouri Association of Osteopathic Physicians and Surgeons, Missouri Academy of Family Physicians, and the St. Louis Metropolitan Medical Society. The defendants are the State of Missouri and intervenors Friends of Missouri Midwives, Kelly and Dallion Rehm, Eric and Jessica Kerr, Dr. Elizabeth Allemann, M.D., Columbia Community Birthing Center, Missouri Midwives Association, Ivy White and Kim James.[1]

Before passing judgment on the constitutionality of a statute, this Court must determine whether plaintiffs have standing to bring the constitutional challenge. *City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 190 (Mo. banc 2006). Because standing is a question of law, review of the issue on appeal is *de novo. Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007). This Court has held that standing, in essence, "roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve Sch. Dist. R–II v. Bd. of Aldermen of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002). Nonetheless, this Court has consistently required that plaintiffs have some legally protectable interest in the litigation so as to be directly and adversely affected by its outcome. *Id.* Where, as here, plaintiffs are associations of individuals, standing must be predicated, *inter alia*, on the fact that the association members would have standing to bring their claims individually. *Mo. Health Care Ass'n v. Att'y Gen. of Mo.*, 953 S.W.2d 617, 620 (Mo. banc 1997).

Plaintiffs' primary claim of standing is premised on a concern that physicians' voluntary cooperation with nurse midwives who are not "licensed" may subject those physicians to professional discipline by the Board of Registration for the Healing Arts. The argument is based on the interplay of three statutes regulating the practice of medicine. The first, section 334.010, RSMo 2000, provides, "It shall be unlawful for any person not now a regis-

---

1. Amicus curiae briefs have been filed by American Medical Association in support of plaintiffs, and by Citizens for Midwifery; Midwives Alliance of North America; National Association of Certified Professional Midwives; Our Bodies, Ourselves; and National Birth Policy Coalition in support of defendants/intervenors.

tered physician within the meaning of the law to practice medicine or surgery in any of its departments ... or engage in the practice of midwifery in this state...." The second, section 334.100.2(10), RSMo 2000, provides that a physician is subject to professional discipline who "knowingly perform[s] any act which in any way aids, assists, procures, advises, or encourages any person to practice medicine who is not registered...." The third, section 191.228, RSMo 2000, which overlaps with section 334.100.2(10), states: "No physician or pharmacist licensed in this state shall be subject to discipline for authorizing, assisting or cooperating with other health care professionals licensed by this state who are practicing their profession within the scope of their license."

Citing these statutes, plaintiffs argue that "if licensed physicians coordinate patient treatment decisions with unlicensed midwives, those physicians and surgeons will be subject to professional discipline." And they emphasize that "the statutes are clear and explicit that midwifery is the practice of medicine and that physicians may be disciplined for assisting, aiding, procuring, advising, or encouraging 'in any way' an unlicensed person to practice as a midwife." All this, however, overlooks the fact that section 376.1753 overrides these disciplinary provisions to the extent they apply to midwifery. Section 376.1753 expressly legalizes the services of certified midwives and does so "[n]otwithstanding any law to the contrary." Thus, certified midwives are exempted out of the unlawful practice of medicine under section 334.010. Furthermore, physicians are no longer subject to discipline under section 334.100.2(10) for aiding, assisting, procuring, advising, or encouraging certified midwives to practice medicine because certified midwives are not engaging in the practice of medicine as it is defined in section 334.010.

Nor does it appear that physicians are subject to discipline under section 191.228. That section is a prohibition against disciplining physicians who assist or cooperate with other health care professionals licensed by this state. But plaintiffs contend that that section, by negative implication, also authorizes the discipline of physicians who assist or cooperate with other health care professionals (including midwives) who are *not* licensed by the state. It does not necessarily follow, however, that this prohibition against disciplining physicians is also a grant of authority to impose discipline. Section 191.228 is a stand-alone provision that does not purport to relate to the comprehensive statutory scheme for discipline of physicians set out in section 334.010 et seq. and administered by the Board of Registration. Moreover, any negative implication of a grant of authority to impose discipline, at least as applied to physicians who assist or cooperate with certified midwives, would fly in the face of section 376.1753's express legalization of certified midwifery. Without finally deciding the legal efficacy of section 191.228, suffice it to say that the prospect that the Board of Registration would or could invoke section 191.228 to impose discipline against physicians who assist or cooperate with certified midwives is simply too attenuated, too slight, and too remote to confer standing. This Court holds, therefore, that plaintiffs cannot predicate standing on the perceived risk that their physician members will be subject to discipline.

■ In the alternative, plaintiffs claim third-party standing on the ground that physicians are representatives of their patients, relying on *Planned Parenthood of Kansas & Mid–Missouri, Inc. v. Nixon,* 220 S.W.3d 732 (Mo. banc 2007). That reliance, however, is misplaced. *Planned*

*Parenthood* conferred physicians standing only to assert the rights of their female patients, "as against governmental interference with the abortion decision." *Id.* at 737 (quoting *Singleton v. Wulff,* 428 U.S. 106, 118, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). This is an exception to the general rule against third-party standing and is limited to abortion cases. *See Singleton,* 428 U.S. at 115, 96 S.Ct. 2868. It bears mention as well that one of the reasons for the general rule—that the actual holders of rights may not wish to assert them, *id.* at 113–14, 96 S.Ct. 2868—is particularly pertinent here. Those who are inclined to engage the services of certified midwives under section 376.1753 would have no interest in contesting the validity of section 376.1753.

In conclusion, plaintiffs have no standing to challenge the constitutional validity of section 376.1753, and for that reason, the judgment is reversed.

STITH, C.J., TEITELMAN, RUSSELL and WOLFF, JJ., concur.

PRICE, J., dissents in separate opinion filed.

BRECKENRIDGE, J., concurs in opinion of PRICE, J.

WILLIAM RAY PRICE, JR., Judge, dissenting.

This lawsuit was brought by four associations of physicians to contest a statute that legalizes the practice of midwifery. The associations claim that the statute is unconstitutional because HB 818, the bill in which the statute was enacted, violates the clear title, single subject, and original purpose requirements of the Missouri Constitution. The majority finds that the physician members of the associations, and therefore the associations themselves, had no standing to challenge the constitutional-

ity of the statute and reverses the trial court judgment. I respectfully dissent.

## I. STANDING

### a.

An association can sue on behalf of its members if it meets three requirements: (1) its members would otherwise have standing to bring their suit in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Mo. Health Care Ass'n v. Attorney Gen. of the State of Mo.,* 953 S.W.2d 617, 620 (Mo. banc 1997). In this case, the only requirement in dispute is whether the individual physician members have standing to bring the suit in their own right.

The physician members claim standing on two grounds. First, they claim a concern that cooperation with the midwives may subject them to professional discipline. Second, they allege that they have an interest because the use of midwives will result in an increased need for emergency healthcare. In turn, this will affect both their ability to practice and the health and safety of their patients. The second argument provides a sufficient basis for standing.

### b.

As to the ability to practice, the physicians allege that they will have to interact with the midwives either by advising their patients of their services or collaborating in the treatment of the patients. Further, they allege, that complications arise during pregnancy and birth that require the skill of the physician and the facilities of a hospital. When these emergency situations arise during home births, the physicians will be required to provide difficult

and high risk emergency care. These allegations are sufficient to establish the physician's individual standing to challenge the constitutionality of the statute.

c.

The physician members also have standing as representatives of their patients. In *Singleton v. Wulff*, 428 U.S. 106, 117–118, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), the United States Supreme Court found that physicians had standing to assert the rights of their women patients. The Court reasoned that the physician's close relationship to their patients made them "uniquely qualified" to litigate the constitutionality of the state's interference with abortion decisions. *Id.* Further, although the women's obstacles to bring suit on their own behalf were not insurmountable, there was "little loss in terms of effective advocacy from allowing its assertion by a physician." *Id.* This Court adopted this reasoning in *Planned Parenthood of Kansas v. Nixon*, 220 S.W.3d 732, 737–38 (Mo. banc 2007), where the Court found that Planned Parenthood had standing to bring the suit on behalf of their minor patients. The Court, citing *Singleton,* stated that "it is generally appropriate to allow a physician to assert the rights of women patients against governmental interference with the abortion decision" and expanded representative standing to Planned Parenthood as well. *Id.*

This case is directly controlled by these two decisions. A physician's ability to represent the interests of his or her patients is not limited to the abortion context. The legalization of midwives is alleged to have an adverse affect on women's and newborn infants' ability to receive safe and quality healthcare. Physicians are in the best position to effectively advocate their patients' rights because of their expertise in this area and familiarity with the risks of the procedures and because they will ultimately be called upon to actually participate in the care of mothers and infants in instances of error or unforeseen complications. In fact, in this situation, the physicians may be the only party able to challenge this statute, especially relative to yet to be born infants.

The purpose of our standing requirements is to ensure that an actual controversy exists and that the controversy is fairly litigated by adverse parties. *See Mo. Health Care Ass'n,* 953 S.W.2d at 620. There is no doubt that there is an actual controversy and that the medical associations are capable of fairly litigating the case. The purpose of the standing requirements is not to shield questionable legislation from legal challenge by denying standing to the only individuals or entities capable of litigating the case at hand.

## II. CONSTITUTIONALITY

Section 376.1753, which legalizes the practice of midwifery, was enacted as part of HB 818. The initial title of HB 818, in pertinent part, was a bill "relating to portability and accessibility of health insurance." The final version of the bill's title stated that it was a bill:

> To repeal sections 103.085, 143.121, 143.782, 313.321, 376.426, 376.776, 376.960, 376.961, 376.964, 376.966, 376.986, 376.989, 379.930, 379.936, 379.938, 379.940, 379.942, 379.943, 379.944, and 379.952, RSMo, and to enact in lieu thereof forty-nine new sections *relating to health insurance,* with an effective date for certain sections (emphasis added).

Section 376.1753 was not specifically identified in the title and the bill contained no other provisions concerning midwifery. The majority of the sections enacted or repealed by this bill, including the midwife provision, are codified in chapter 376,

which concerns life, health, and accident insurance. Most of the provisions in the bill are also enforced or implemented by the Department of Insurance, Financial Institutions and Professional Registration. The trial court found that regulating the practice of midwifery was not the same subject as health insurance and because midwifery did not relate to health insurance, the title was underinclusive. The trial court further held that the addition of this provision changed the original purpose of the bill, which concerned health insurance accessibility and portability.

Article III, section 23 provides that "no bill shall contain more than *one subject* which shall be *clearly expressed in its title*" (emphasis added). The single subject provision requires that all provisions of the bill must fairly relate to the same subject, have a natural connection therewith or are incidents or means to accomplish the bill's purpose. *See Hammerschmidt v. Boone County*, 877 S.W.2d 98, 102 (Mo. banc 1994). The subject of the bill is discerned from the title of the bill. *Id.* The clear title provision requires that the title indicate, in a general way, the kind of legislation being enacted. *See Fust v. Attorney Gen. for the State of Mo.*, 947 S.W.2d 424, 429 (Mo. banc 1997). If the title of the bill contains a particular limitation or restriction, "a provision that goes beyond that limitation in the title is invalid because such title affirmatively misleads the reader." *Id.* The clear title and single subject requirements are interrelated and function as procedural limitations over legislative action, designed to facilitate orderly procedure, prevent logrolling, and to defeat surprise in the legislative process. *See Hammerschmidt*, 877 S.W.2d at 102.

The title of HB 818 is "relating to health insurance." This title and the other sections of the bill indicate that the bill's subject is health insurance. The midwife provision legalizes midwives to provide pregnancy related services. The practice of midwifery is not the same subject as health insurance. The title of HB 818 does not clearly indicate its contents and affirmatively misleads the readers of the type of legislation the bill intends to enact.

The state argues that HB 818 is constitutional because a direct relationship exists between health services, which include midwifery, and health insurance. It notes that insurance coverage can only be expanded to include midwifery if the services are legal. It concludes that the midwife provision accomplishes the bill's purpose of increasing availability and affordability of health insurance.

The midwife provision and the remaining provisions of the bill may relate to the general concept of health services. However, the general concept of health services is broader than health insurance, the subject and title of the bill. Moreover, the midwife provision does not mandate insurance coverage for these services and does not address in any way how this provision will affect existing public health or health insurance law. Thus, it cannot be said that the midwife provision of the bill "fairly relates to the same subject" or is "incidents or means to accomplish the bill's purpose." [1]

Because the midwife provision is not essential to the efficacy of the bill, the omission of this provision would not make the other portions of the bill incomplete or unworkable, and the provision is not one without which the legislators would not

---

1. Since it is clear on the merits that this bill violates the clear title and single subject requirements of the constitution, the original purpose requirement need not be addressed, although the same result would follow.

have adopted the bill, this provision should be severed from the remainder of HB 818. *See Hammerschmidt,* 877 S.W.2d at 103.

Because HB 818 violated the constitutional requirements of single subject and clear title, section 376.1753 is unconstitutional and should be severed from HB 818. Therefore, I would affirm the trial court's judgment.

