ASSOCIATED INDUSTRIES OF
MISSOURI and Alumax Foils,
Inc., Appellants,

v.

DIRECTOR OF REVENUE,
et al., Respondents.

No. 77885.

Supreme Court of Missouri,
En Banc.

March 26, 1996.

As Modified on Denial of Rehearing
April 23, 1996.

Thomas C. Walsh, Juan D. Keller, St. Louis, for Appellants.

Jeremiah W. (Jay) Nixon, Attorney General, Don Downing, Deputy Attorney General, Jefferson City, Alex Bartlett, Jefferson City, for Respondents.

Joann Leykam, County Counselor, Stephanie K. Gastman, Harold A. Ellis, Asst. County Counselors, for Amicus Curiae St. Charles County.

LIMBAUGH, Judge.

The United States Supreme Court determined in *Associated Industries of Missouri v. Lohman,* —— U.S. ——, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994), that § 144.748, RSMo Supp.1992, which imposes a statewide 1.5% use tax as a counterpart to local sales taxes, is invalid as applied in those taxing districts where the local sales tax is less than 1.5%. In those districts, the Court explained, the use tax impermissibly discriminates against interstate commerce in violation of the Commerce Clause. In view of the Supreme Court's ruling, we must now decide on remand whether, as a matter of Missouri state law, § 144.748 is completely invalid and incapable of being enforced. Because this case involves the construction of revenue laws and the validity of a statute, we have jurisdiction under Article V, § 3, of the Missouri Constitution. We now strike down the statute in toto.

I.

Section 144.748 imposes an additional 1.5% use tax on tangible personal property sold outside of Missouri but stored, used, or consumed within the state. When added to the 4.225% general use tax imposed by § 144.610, RSMo 1994, the result is an aggregate use tax on all interstate transactions of 5.725%. Sales transacted within Missouri are subject to a statewide sales tax of 4.225%, and local sales taxes are imposed at varying rates that may increase the aggregate sales taxes from 4.225% to over 7%, depending on the local taxing district.[1]

Under this taxing scheme, intrastate transactions in certain taxing districts are taxed at a lower rate than similar interstate transactions. In light of this discrepancy, Associated Industries of Missouri ("AIM")[2] brought suit to challenge the validity of § 144.748, claiming that the statute violated the Commerce Clause of the United States Constitution and the uniformity clause of the Missouri Constitution.[3] The circuit court ruled that the additional use tax was constitutional in all respects and refused to enjoin the Director of Revenue (Director) from collecting the tax. This Court affirmed that judgment on appeal. *Associated Industries of*

---

1. A more complete description of the sales and use tax scheme in Missouri may be found in our previous opinion in this matter, *Associated Ind. v. Director of Revenue,* 857 S.W.2d 182, 184–185 (Mo. banc 1993), *rev'd,* —— U.S. ——, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994).

2. AIM is a trade association representing resident and out-of-state businesses that transact business within Missouri. Alumax Foils, Inc., is also a plaintiff in this matter and joins AIM in this appeal.

3. Respondents DeLong, et al., were granted leave to intervene as defendants in support of the additional use tax.

*Missouri v. Director of Revenue,* 857 S.W.2d 182 (Mo. banc 1993), *rev'd* ―― U.S. ――, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994). Acting upon AIM's petition, the United States Supreme Court granted certiorari and reversed the judgment of this Court, finding that the additional use tax discriminated against interstate commerce and was unconstitutional as applied in those localities where the aggregate use tax exceeded the aggregate sales tax. *Associated Industries of Missouri v. Lohman,* ―― U.S. ――, 114 S.Ct. 1815, 128 L.Ed.2d 639 (1994). The Supreme Court did not address any questions of state law but remanded the case to this Court. We, in turn, withdrew our prior mandate and remanded the case to the Circuit Court of Cole County for further proceedings consistent with the United States Supreme Court opinion.

On remand, AIM again sought a declaration that § 144.748 was invalid in its entirety and an injunction prohibiting the Director from enforcing § 144.748 anywhere in Missouri. In support thereof, AIM maintained that the Supreme Court's partial invalidation of § 144.748 rendered the statute incapable of rational understanding or administration, inconsistent with legislative intent, and violative of the uniformity clause of the Missouri Constitution. The Director contended that these points were beyond this Court's mandate and therefore not eligible for consideration on remand.[4] The circuit court denied injunctive relief and held that the Director may enforce § 144.748 in those taxing districts where the local sales tax rate is equal to or greater than 1.5%. AIM now appeals this final judgment.

## II.

■■■ Initially, we must address the procedural question of whether the issue raised by AIM on remand—the continued validity of § 144.748 as a matter of state law—was properly before the trial court and, consequently, is now properly before this Court on appeal. In this regard, all parties agree that proceedings on remand should be in accor-

dance with the mandate and the result contemplated in the appellate court's opinion. *Frost v. Liberty Mut. Ins. Co.,* 813 S.W.2d 302, 304 (Mo. banc 1991). The circuit court interpreted the mandate to preclude consideration of any issue other than the propriety of the remedy of tax refunds. Because AIM had not claimed any refund, the trial court deemed all issues disposed of and denied all other relief sought.

The actual mandate of the United States Supreme Court called "for further proceedings not inconsistent with this opinion." *Associated Industries,* ―― U.S. at ――, 114 S.Ct. at 1826. This Court has held that substantially the same language—"remanded for further proceedings in accordance with this opinion"—is merely a simple reversal and remand, as opposed to a remand "import[ing] a direction of specified things." *Murphy v. Barron,* 228 S.W. 492, 494 (Mo. 1920). We conclude, therefore, that the mandate of the Supreme Court was a general mandate and was not explicitly limited to a determination of available remedies.

The Director, however, contends that while the Supreme Court's mandate, itself, contains no limiting language, the mandate, when read in the context of the Supreme Court's entire opinion, is, in fact, limited to a consideration of the remedy of tax refunds. We agree that the mandate cannot be read in isolation, but should be interpreted in light of the entire opinion. *Frost,* 813 S.W.2d at 305. In so doing, however, we still cannot fathom how the circuit court's jurisdiction was limited to the extent the Director suggests.

On this issue, the Supreme Court stated that the appropriate remedy in the case was a question of state law and best left for consideration on remand. *Associated Industries,* ―― U.S. at ――, 114 S.Ct. at 1825. More specifically, the Court said that its holding "does not in itself dictate the relief that the State must provide." *Id.* Furthermore, the Court noted that the parties had "not addressed the procedures that were available in Missouri to contest the tax." *Id.* To sum up, the Court declared that "[t]he

---

4. The Director's arguments, for the most part, are echoed by intervenors in their brief and by St. Charles County in its amicus brief. For sim-

plicity's sake, this opinion will refer to all arguments made in support of the statute as the Director's.

methods best adapted to achieving equal treatment in this case, whether partial or complete refunds or other measures are similarly matters properly left for determination on remand." *Id.*

Despite the express reference to tax refunds, the use of the open-ended term "other measures" makes it clear that the Supreme Court contemplated a review of any other procedures that might be available in Missouri to contest the tax. To be sure, no one disputes, and, indeed, the Director acknowledges, that a declaratory judgment action coupled with a request for an injunction is an appropriate procedure for contesting a tax in Missouri.

Nevertheless, the Director, in her brief, devotes considerable effort to an analysis of *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 39–40, 110 S.Ct. 2238, 2251–52, 110 L.Ed.2d 17 (1990), where the Supreme Court approved partial refunds as a remedy for a tax that violated the Commerce Clause. Apparently, the Director would like to interpolate the remedy in *McKesson* into the Supreme Court's mandate in *Associated Industries.* Without addressing the question of whether such interpolation is ever proper, we note that the present case is factually distinguishable from *McKesson,* where an injunction had already been granted prior to the appeal. Thus, there was no need for the *McKesson* Court to address the propriety of an injunction in its mandate.

■ On a different theory, the Director contends that injunctive or declaratory relief was implicitly foreclosed by the Supreme Court by the fact that it refused to strike down § 144.748 in its entirety. As the Director explains, for the circuit court to strike down the statute when the Supreme Court refused to do so would contravene the mandate. In our view, however, the Director disregards the fact that the Supreme Court was only faced with the validity of § 144.748 under federal law. It is clear from the record that no questions of state law were even presented to the Supreme Court, let alone answered or otherwise disposed of, and so the validity of § 144.748 as a matter of state law simply was not within the compass of the Supreme Court's mandate. A mandate is controlling only as to matters within its compass; a lower court is free to act as to other issues. *Sprague v. Ticonic Nat. Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 780–81, 83 L.Ed. 1184 (1939).

Finally, the Director submits that the points AIM raises on remand are not supported by the pleadings and are new to the case, having never been raised before. The Director, however, mischaracterizes the record. In the initial petition, AIM raised both state and federal constitutional challenges. Moreover, the question of whether the statute could survive if found only partially invalid was raised, first by the intervenors in their answer and later by all parties in post-trial briefs at the request of the trial court. The state law questions and the partial invalidity issue were also briefed to this Court on appeal from the initial trial court proceeding. Of course, when both the trial court and this Court upheld the statute, neither had to address the viability of § 144.748 upon a finding of partial invalidity. In any event, we hold that resolution of this issue is now proper.

### III.

On the merits, our first point of reference is the severability statute, § 1.140, RSMo 1994, which states:

> The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

■ The parties in this case take the position that § 1.140 is inapplicable because the Supreme Court did not strike down any particular word, clause, sentence, paragraph or

section of § 144.748. Instead, the Supreme Court invalidated the statute *as applied* to certain taxing districts, leaving intact the statute's provisions. Because § 1.140 does not address the "as applied" situation, AIM draws on traditional common-law severability analysis to show that § 144.748, when limited in its application, no longer comports with legislative intent and must therefore fail. On the other hand, the Director insists that once it is determined that § 1.140 does not apply, severability is no longer an issue in the case, and that principles of severability are inapplicable unless some provision of the statute in question is actually stricken.[5]

■ We determine that the partial invalidity of § 144.748 brings it squarely within a particular branch of the doctrine of severability overlooked by the Director. Professor Singer, in his oft-quoted text on statutory construction, identifies three different situations in which severability applies, although very often the cases do not explicitly distinguish among the three. Norman J. Singer, SUTHERLAND STAT CONST § 44.02 at 494 (5th ed. 1993). They are: 1) where part, but not all, of an act is invalid as to all applications; 2) where "the entire act is invalid to part, but not all, possible applications"; and 3) where part, but not all, of the act is invalid to part, but not all, possible applications. *Id.* at 493–4. Severability under the second situation pertains to statutes like § 144.748 that are partially invalid only as applied. Necessarily, the doctrine operates in a different fashion. As stated in *Sutherland,*

> It is not possible to deal with [the "as applied"] situation by invalidating, or excising, part of the text and allowing the remainder to continue in effect. If the act is to be sustained, its language must be restricted in application to those objectives within the jurisdiction of the legislature.

*Id.* § 44.14. Stated another way, the statute must, in effect, be rewritten to accommodate the constitutionally imposed limitation, and

this will be done as long as it is consistent with legislative intent.

With this understanding of the doctrine, we turn to § 144.748, the statute in question, which states, in pertinent part, as follows:

> [T]here is hereby imposed an additional use tax in the amount of one and one-half percent upon all transactions which are subject to the taxes imposed under sections 144.600 to 144.745. This tax shall be collected and remitted together with the taxes imposed under sections 144.600 to 144.745.

Giving the statute its plain meaning, the additional 1.5% tax is to be imposed on *all* transactions subject to the statewide 4.225% use tax in § 144.610. Because the statute may not constitutionally be applied to certain transactions, *all* transactions may not be taxed, and the full operation of the statute is unattainable. As stated, whether the statute can still stand is a matter of legislative intent.

Despite the general inapplicability of § 1.140, the first sentence—"The provisions of every statute are severable."—expresses the legislative intent that all statutes, including § 144.748, should be upheld to the fullest extent possible. To do so in this case, however, we must determine that the General Assembly would have passed § 144.748 even if it could only be applied in the manner required by the Supreme Court. This result, the Director vigorously asserts, is indeed consistent with the legislative intent in passing the statute.

The Director defines the General Assembly's purpose as "leveling the playing field" between interstate and intrastate transactions. There is no doubt that this is the primary purpose of § 144.748 and that such purpose would probably still be served if the statute were to be applied in the manner required by the Supreme Court. But in light of the legislative history, we are convinced that the General Assembly, in passing the additional use tax in the form in which it did, intended the tax to be uniform across the

---

5. Initially, we note the irony of the fact that the Director would like us to uphold the statute, and, yet, rejects application of both the severability statute and the common-law doctrine of severability, the purposes of which are to permit partially invalid statutes to be upheld to the fullest extent possible.

state, regardless of locality or local sales tax rate.

Prior to the enactment of § 144.748, the General Assembly had enacted § 144.747, which gave counties and municipalities the option of levying a local use tax equal to their local sales tax. Had § 144.747 actually been implemented, the potential result would have been a wide variety of local use taxes across the state, some jurisdictions having them, and some not. The statute was never implemented, however, and was ultimately repealed and replaced with § 144.748, a uniform statewide tax, which had the significant advantage that it would be much less difficult to administer.

In view of the Supreme Court's ruling, § 144.748 is reduced to something similar to what had previously been rejected, a patchwork tax scheme in which some jurisdictions have a use tax, and some do not. We refuse to speculate that the General Assembly would have approved the statute as now limited, and therefore we must strike down the statute altogether.

■ On a different tack, the Director contends that no limiting language need be added to § 144.748 to conform it to the Supreme Court's holding because the statute, as written, already conforms. Section 144.748(1) and (2) incorporate the provisions of the general use tax as set out in §§ 144.600 to 144.745. Included within those sections is § 144.615(1), which provides an exemption for "[p]roperty, the storage, use, or consumption of which this state is prohibited from taxing under the constitution ... of the United States." According to the Director, the language of § 144.615(1) demonstrates that the General Assembly anticipated that the additional use tax may be unconstitutional under certain circumstances. In other words, the Director maintains that the exceptions created by the Supreme Court to the application of § 144.748 are encompassed within the exemption found in § 144.615(1).

We disagree. The constitutional exception to § 144.748 created by the Supreme Court's opinion is a different type of exception than that allowed for in § 144.615. The exemption in § 144.615(1) is defined by "property", presumably a certain discernible type of

property, such as military equipment used by the United States. The Supreme Court's exception to the use tax is based not on the inherent nature of the property in question, but rather on local sales tax rates. The Supreme Court simply did not address the type of property taxed, but rather the locale of the storage, use or consumption of the out-of-state good and the local sales tax rate within such locale. Therefore, the fact that § 144.615(1) is incorporated into § 144.748 still does not allow § 144.748 to be implemented within constitutional bounds.

It is arguable that to distinguish between the types of exemptions misses the over-riding point that the legislature contemplated in general that there would be constitutional exceptions to the additional use tax. We observe, however, that had the General Assembly wished to exempt certain local taxing districts as opposed to certain "property" under § 144.615(1), it certainly could have used such language. In § 144.617, for example, the General Assembly created a series of exemptions for "certain transactions" between corporations and shareholders. Each exemption is identified as a "transfer", not as "property." In this way the intent was made clear.

### IV.

In summary, the trial court's order that the Director could enforce § 144.748 in those jurisdictions with a local sales tax equal or greater than 1.5% was in error. We find that the trial court's interpretation of § 144.748 does not comport with legislative intent. Because § 144.748 cannot be constitutionally applied as written, and because we have no power to rewrite the statute, we must strike it down in its entirety. The judgment is reversed.

HOLSTEIN, C.J., PRICE, ROBERTSON, COVINGTON and WHITE, JJ., and FOREST W. HANNA, Special Judge, concur.

BENTON, J., not sitting.