NATIONAL SOLID WASTE MAN-
AGEMENT ASSOCIATION, et
al., Respondents,

v.

DIRECTOR OF THE DEPARTMENT OF
NATURAL RESOURCES, Appellant.

No. 79737.

Supreme Court of Missouri,
En Banc.

Feb. 24, 1998.

As Modified on Denial of Rehearing
April 21, 1998.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen King Mitchell, Timothy P. Duggan, Asst. Attys. Gen., Jefferson City, for Appellant.

Lowell D. Pearson, Alex Bartlett, Jefferson City, for Respondents.

LIMBAUGH, Judge.

Two days before the end of the 1995 legislative session, the House of Representatives tacked onto the tail-end of the 31–page Senate Bill 60 (SB 60) an amendment, codified at section 260.003, RSMo Supp.1996, that imposed new requirements for the issuance of permits, licenses, and grants of authority for both solid waste and hazardous waste facilities. That amendment, the focus of this appeal, expanded the subject of the bill from one that originally encompassed only "solid waste management" to one encompassing both "solid waste management" and hazardous waste management. Respondents sued to enjoin enforcement of the hazardous waste management applications of SB 60 on the grounds that the amendment violated the "original purpose" provision from article III, section 21, of the Missouri Constitution and the "one subject" and "clear title" provisions from article III, section 23. The circuit court granted summary judgment in favor of Respondents. This Court has exclusive jurisdiction of the appeal. *Mo. Const. art. V, sec. 3.* For the reasons that follow, this Court holds that the subject of SB 60 was not clearly expressed in its title and that the amendment is therefore invalid to the extent that it pertains to hazardous waste management. The judgment of the circuit court is affirmed.

## I.

█ Appellant, Director of the Department of Natural Resources (Director), first raises the threshold issue of whether Respondents have standing to challenge SB 60's constitutionality. The Respondents are Terry Schlemeier, a Missouri taxpayer; National Solid Waste Management Association, a trade association of individuals working in solid waste management; and Browning–Ferris Industries, Inc., a corporation engaged in the business of solid waste management. To establish standing, Schlemeier, like all Missouri taxpayers, need only show "that [his] taxes went or will go to public funds that have or will be expended due to the challenged action." *O'Reilly v. City of Hazelwood,* 850 S.W.2d 96, 98 (Mo. banc 1993). From our review of the record, the circuit court correctly concluded that "enforcement of SB 60 has and will cost the state funds for salaries, expenses, and other costs that would not otherwise be made." It follows that taxpayer Schlemeier has standing, and for that reason, we need not address the standing of the other two respondents. *See Missouri Coalition for the Env't v. Joint Comm. on Admin. Rules,* 948 S.W.2d 125, 132 (Mo. banc 1997).

## II.

Article III, section 21, of the Missouri Constitution mandates that "no bill shall be so amended in its passage through either house as to change its original purpose." Section 23 requires that "[n]o bill shall contain more than one subject which shall be clearly expressed in its title." In recent years, this Court has had numerous opportunities to outline and discuss the policies behind these constitutional provisions. *See Stroh Brewery Co. v. State,* 954 S.W.2d 323 (Mo. banc 1997); *Missouri Health Care Ass'n v. Attorney General,* 953 S.W.2d 617 (Mo. banc 1997); *Fust v. Attorney General,* 947 S.W.2d 424 (Mo. banc 1997); *Carmack v. Director, Missouri Dep't of Agric.,* 945 S.W.2d 956 (Mo. banc 1997); and *Hammerschmidt v. Boone County,* 877 S.W.2d 98 (Mo. banc 1994). In *Stroh Brewery Co.,* we summarized:

[T]hese constitutional limitations function in the legislative process to facilitate orderly procedure, avoid surprise, and prevent "logrolling," in which several matters that would not individually command a majority vote are rounded up into a single bill to ensure passage. Sections 21 and 23 also serve to keep individual members of the legislature and the public fairly apprised of the subject matter of pending laws and to insulate the governor from "take-it-or-leave-it" choices when contemplating the use of the veto power.

*Stroh Brewery Co.*, 954 S.W.2d at 325–26. Without question, the circumstances surrounding the passage of SB 60 are exactly those to which these constitutional limitations are addressed. The section pertaining to hazardous waste management was part of a last-minute amendment about which even the most wary legislators could hardly have given their considered attention and about which concerned citizens likely had no input.

### A.

The Respondents' motion for summary judgment and the circuit court's ruling focused on the "single subject" and "original purpose" claims. Citing the standard from *Hammerschmidt*, the circuit court held that "hazardous waste does not 'fairly relate' or have a 'natural connection' to solid waste" so that the two could properly be categorized as one subject. Under a similar analysis, the circuit court determined that the purpose of the bill as originally introduced—"amendment of the state's solid waste management law"—is different from a purpose that relates both to solid waste management and hazardous waste management. Although it is arguable that some overlap exists between the two kinds of waste—some hazardous waste may in a literal sense be solid waste—it is undisputed that the terms "solid waste management" and "hazardous waste management" are distinct. Under chapter 260, entitled "Environmental Control," hazardous waste management is subject to a specific regulatory scheme (secs. 260.350 to 260.434, RSMo 1994) separate and dissimilar from that pertaining to solid waste management (secs. 260.200 to 260.345, RSMo 1994). In fact, as part of the solid waste management scheme, the legislature has expressly defined "solid waste" to *exclude* hazardous waste. Section 260.200(34), RSMo Supp.1996.

Nonetheless, the Director claims that the amendment to SB 60 did not change the bill's original purpose or expand it to encompass more than one subject. The bill's original purpose and subject, as the Director explains, was not solid waste management, although that was the sole focus of the bill as originally introduced, but was instead the larger, more expansive subject of environmental control, which encompasses all types of waste management. Under this argument, hazardous waste management "fairly relates to" and has a "natural connection with" solid waste management because they both fall under the purview of environmental control. In any event, it is unnecessary to resolve these claims.

### B.

Assuming, *arguendo*, that the original purpose and single subject of the bill is environmental control, there is still a clear title violation. The title of the bill as finally passed was:

> AN ACT to repeal sections 260.200, 260.201, 260.202, 260.205, 260.207, 260.227, 260.228, 260.235, 260.241, 260.270, 260.273, 260.274, 260.275, 260.276, 260.325, 260.330, 260.335 and 260.345, RSMo 1994, *relating to solid waste management*, and to enact in lieu thereof twenty new sections relating to the same subject, with penalty provisions.

(Emphasis added.) The title's failure to refer also to hazardous waste management or to an all-encompassing category of environmental control, or something similar, is a fatal defect. The subject of the bill—whether characterized as a combination of solid waste management and hazardous waste management, or as environmental control—is not clearly expressed in its title.

The standards for evaluating a "clear title" violation are well-settled. As this Court reiterated last year in *Fust*:

> The "clear title" provision, like the "single subject" restriction, was designed to prevent fraudulent, misleading, and improper legislation, by providing that the title should indicate in a general way the kind of legislation that was being enacted. If the title of a bill contains a particular limitation or restriction, a provision that goes beyond the limitation in the title is invalid because such title affirmatively misleads the reader.

*Fust*, 947 S.W.2d at 429 (citations omitted). The basic idea, stated somewhat differently, is that "where the title of an act descends to particulars and details, the act must conform to the title as thus limited by the particulars

and details." *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 39 (Mo. banc 1982). In more simple terms, the rule is that the title to a bill cannot be underinclusive.

■ The argument to be made that the title in this case is sufficiently *inclusive* is the same used to fend off the original purpose and single subject challenge—that the subject is not only solid waste management, but all matters "relating to" solid waste management. In other words, a title stating that the bill relates to solid waste management encompasses not only solid waste management, but also everything that is related to solid waste management. We disagree. The mere fact that two subjects in a bill can be reconciled as part of a broader subject, and thus satisfy original purpose or single subject challenges, does not, in itself, mean that the broader subject has been clearly expressed in the title of a bill.[1] A title that identifies that broader subject—in this case environmental control or perhaps all types of waste management—is very general, but it is accurate.[2] On the other hand, a title that fails to identify the broader subject—like the title in the case at hand—is not so clear. A bill's multiple and diverse subjects, absent specific itemization, can only be clearly expressed by their commonality—by stating some broad, umbrella category that includes all the subjects within its cover. A title stating that the bill relates to solid waste management is unclear if the bill relates also to hazardous waste management. It forces the reader to search out the commonality of the subjects—in this case, environmental control—from some source extrinsic to the title itself.

This, in essence, is the rationale behind the above-stated rule that where the title of a bill "descends to particulars and details, the act must conform to the title." In this case, the title of SB 60 does not generally indicate what the bill contains, but instead descends to the particular subject of solid waste management. The title not only states that the bill relates to solid waste management, but also lists specifically the repealed sections, each of which pertained solely to the solid waste management scheme, and further notes the enactment "of twenty new sections relating to the same subject." The irreconcilable problem is that the bill also includes the particular subject of hazardous waste management and thus does not conform to the title. This lack of conformity makes the title affirmatively misleading. It gives the reader the mistaken impression that the bill pertains to solid waste management only. In other words, the phrase "relating to solid waste management" erroneously implies that the bill does not relate to any other kind of waste management, and the reference to the repealed sections from the solid waste management scheme reinforces that erroneous implication.

Finally, it bears mention that expanding the title of a bill to reflect the commonality of all the subjects contained in the bill is not a novel proposition. It is the process that the legislature has routinely used to accommodate amendments to a bill and a process this Court has consistently approved. *See, e.g., Westin Crown Plaza Hotel Co. v. King,* 664 S.W.2d 2 (Mo. banc 1984) (noting with approval that the original title "An Act ... relating to fees and compensation of state and local registrars of vital statistics," was expanded to read "An Act ... relating to certain fees related to the division of health"); and *Lincoln Credit Co.,* 636 S.W.2d 31 (noting with approval that the original title "An Act ... relating to interest" was expanded to read "An Act ... relating to certain credit transactions").

To summarize, this Court holds that the title to SB 60 is underinclusive. The title's reference to solid waste management reflects

---

1. The dissent's focus on *Hammerschmidt v. Boone County,* 877 S.W.2d 98 (Mo. banc 1994), and *Stroh Brewery Co. v. State,* 954 S.W.2d 323 (Mo. banc 1997), fails to take into account that those decisions address only original purpose and single subject challenges. In contrast, the case at hand involves a clear title challenge, which for the reasons stated, necessitates a different analysis. The other case discussed by the dissent, *Fust v. Attorney General,* 947 S.W.2d 424 (Mo. banc 1997), involved a clear title challenge, but the title did not include the "relating to" language at issue in this case.

2. A different problem arises, of course, when the larger category is so general and broad that it fails to give notice of the bill's true subject. *Fust,* 947 S.W.2d at 429.

neither the specific subjects contained in the bill, which are both solid waste management *and* hazardous waste management, nor any larger subject such as environmental control or waste management in general, under which both solid waste management and hazardous waste management would be covered. As such, the subject of the bill is not clearly expressed in the title. In view of the clear title violation, SB 60 is unconstitutional to the extent that it pertains to the subject of hazardous waste management.

### III.

■ Respondents suggest that section 260.003, the offending provision of SB 60, should be severed in its entirety. This remedy, at least in this case, is contrary to the mandate of the severance statute, section 1.140, RSMo, that "all statutes . . . should be upheld to the fullest extent possible." *Associated Indus. v. Director of Revenue*, 918 S.W.2d 780, 784 (Mo. banc 1996). Section 260.003 applies to hazardous waste management because the section refers to a "permit, license or grant of authority [] issued or renewed . . . *pursuant to this chapter*" (emphasis added), and "this chapter"—chapter 260—encompasses the separate regulatory schemes for both solid waste management and hazardous waste management. The operative language of section 260.003 — the phrase "pursuant to this chapter"—cannot be excised in order to restrict the section's application to solid waste management only. Nonetheless, severance may be accomplished by restricting the application of the statute. As this Court recognized in *Associated Industries v. Director of Revenue*, where a provision is invalid as to some, but not all, possible applications, and it is not possible to excise part of the text and allow the remainder to be in effect, the language of the provision must be restricted to the valid application. *Id.* "Stated another way, the statute must, in effect, be rewritten to accommodate the constitutionally imposed limitation, and this will be done as long as it is consistent with legislative intent." *Id.*

■ The question of legislative intent, in this context, is whether the legislature would have enacted SB 60 without section 260.003's application to hazardous waste management. The answer is rather obvious. The legislative intent behind SB 60, indeed the very purpose of the bill, was to regulate solid waste management. After all, the bill's title stated expressly that the bill related to solid waste management, and all other provisions of the bill do, in fact, relate to solid waste management. On the other hand, the application of the bill to hazardous waste management—an application that appears only in section 260.003—seems to be incidental and perhaps even unintentional. Consistent with legislative intent, this Court declines to sever section 260.003 in its entirety.

### IV.

For the foregoing reasons, the Director is enjoined from enforcing the hazardous waste management application of SB 60. Judgment is entered accordingly. Rule 84.14.

ROBERTSON, COVINGTON and WHITE, JJ., concur.

PRICE, J., dissents in separate opinion filed.

BENTON, C.J., and SPINDEN, Special Judge, concur in opinion of PRICE, J.

HOLSTEIN, J., not sitting.

PRICE, Judge, dissenting.

The majority holds that the title of SB 60 is unconstitutional because it is underinclusive in that it is entitled "an act . . . relating to solid waste management," but fails to reflect that provisions of the bill also deal with hazardous waste management. The majority treats "relating to" as language of exclusivity, thereby restricting the reach of SB 60 to provisions dealing solely with solid waste management. I disagree because this restrictive reading of the title is contrary to the plain meaning of the words "relating to"; the majority's interpretation conflicts with our precedent instructing that only language that clearly and undoubtedly violates the procedural limitation will support a constitutional challenge; and no showing has been made on the record that hazardous waste management is, in fact, unrelated to solid waste management.

The title of SB 60 expressly states the subject of the act to be "relating to solid waste management." The majority contends that the language "relating to" is a restrictive term and, therefore, it prohibits the inclusion of a provision dealing with hazardous waste. They hold that "the phrase 'relating to solid waste management,' ... implies that the bill does not relate to any other kind of waste management." This reading contradicts the plain and ordinary meaning of the words "relating to." These are words of connection not restriction. "Relate" is defined as "to show or establish a logical or causal connection between." "Related" is defined as "connected by reason of an established or discoverable relation." Webster's International 1916 (3d ed.1981).

The common use of these words in the legislative process has been to indicate in a title that matters connected with the stated subject of the bill may be indicated therein. Otherwise, if each matter touched upon by a bill must be separately stated in the bill's title, the title would need to recite almost the entirety of the bill itself. Thus, the proper analysis should begin by determining if there is a logical or causal connection between hazardous and solid waste management. The majority fails to demonstrate that such a relationship is lacking other than to say, in a conclusory statement, that "relating to" excludes other types of waste management.

The majority's novel[1] reading of "relating to" as a restrictive term, and their subsequent finding that the title is "underinclusive," is contrary to the reasoning of our past decisions. In *Hammerschmidt v. Boone County,* we found that a bill whose subject was to amend laws "relating to elections" violated the single subject requirement of article III, sec. 23 when it included a provision that permitted a county to adopt its own constitution. 877 S.W.2d 98 (Mo.1994). Never relying on a restrictive reading of "relating to," we instead emphasized that the challenged provision "does not fairly relate to elections, nor does it have a natural connection to that subject." *Id.* at 103. Further, we recognized the following principles, stating:

[A]n act of the legislature approved by the governor carries with it a strong presumption of constitutionality. This Court will resolve doubts in favor of the procedural and substantive validity of an act of the legislature. Attacks against legislative action founded on constitutionally imposed procedural limitations are not favored; we ascribe to the General Assembly the same good and praiseworthy motivations as inform our decision-making processes. Therefore, this Court interprets procedural limitations liberally and will uphold the constitutionality of a statute against such an attack unless the act *clearly and undoubtedly* violates the constitutional limitation.... [T]his Court has consistently attempted to avoid an interpretation of the Constitution that will "limit or cripple legislative enactments any further than what was necessary by the absolute requirements of the law." *Id.* at 102 (citations omitted) (emphasis added).

In *Fust v. Attorney General for the State of Missouri,* 947 S.W.2d 424 (Mo.1997), a provision granting fifty percent of any punitive damages award to the state was challenged as not being clearly expressed in a title reading "to repeal ... and to enact ... new sections for the purpose of assuring just compensation for certain person's damages." Among appellant's arguments was that the title was too restrictive to encompass the "punitive damages" provision. We rejected those contentions, holding that "appellants have failed to sustain their burden of establishing that the title contains a restriction or limitation...." *Id.* at 429. We noted that "the one asserting the unconstitutionality of the statute has the burden of showing the constitutional procedural limitation has 'clearly and undoubtedly' been contravened." *Id.* at 428. (citation omitted). Most significantly, we stated "the title *need not describe every detail* contained in the bill. The title to the act is *valid if it indicates the general contents* of the act...." *Id.* at 429 (emphasis added).

In *Stroh Brewery Co. v. State,* 954 S.W.2d 323 (Mo.1997), we analyzed the original title

---

1. Respondent did not even raise or argue such a proposition.

of SB 933, which read "an act to amend ... by adding one new section relating to the auction of vintage wine...." Undertaking an original purpose analysis, we faced the issue of whether the term ['by'] restricted the manner in which the bill could be amended. We stated that "while [by] might have been meant to convey exclusivity, such a construction is not clear and undoubtedly so. When alternative readings of a statute are possible, we must choose the reading that is constitutional." *Id.* We noted that the legislature could have used clearer language of limitation—such as "for the sole purpose of." We also recognized that:

> "[A] bill's sponsor is faced with a double-edged strategic choice. A title that is broadly worded as to purpose will accommodate many amendments that may garner sufficient support for the bill's passage. Alternatively, a title that is more limited as to purpose may protect the bill from undesired amendments, but may lessen the ability of the bill to garner sufficient support for passage. Because we are required to uphold the constitutionality of a statute against attack unless the statute clearly and undoubtedly violates the constitution, only clear and undoubted language limiting purpose will support an article III, section 21 challenge."

*Id.* at 326.

Particularly fatal to the majority's analysis is the fact it entirely overlooks the record below and the failure of respondent to establish as a matter of fact what solid waste *management* and hazardous waste *management* are, or that they are, in fact, not related. *See State v. Hampton,* 653 S.W.2d 191, 194 (Mo. banc 1983) ("The burden of establishing [a statute's] unconstitutionality rests upon the party questioning it.") Instead, the majority appears willing simply to declare that solid waste *management* and hazardous waste *management* are not related as a matter of law, despite the fact that neither are defined in the statute or have been defined by our prior case law.

Admittedly, the terms "solid waste" and "hazardous waste" are defined by the statute and it is true that the definition affirms that they are not one in the same. The definition does not say, however, that the two are unrelated to one another.

A review of the law surrounding hazardous and solid waste reveals that the two are related. Our legislature has defined solid waste, as shown above, as including "garbage, refuse and other discarded materials...." Section 260.200(34), RSMo 1996 Supp. Hazardous waste is defined as:

> "[A]ny waste or combination of wastes, as determined by the commission by rules and regulations, which, because of its quantity, concentration, or physical, chemical or infectious characteristics, may cause or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness, or pose a present or potential threat to the health of humans or the environment."

Section 260.360(11), RSMo 1996 Supp. Simply put, both topics relate to waste. Whether hazardous or solid, our legislature has set up schemes to transport, discard, and dispose of it. It is telling that the legislature defined "solid waste" as excluding hazardous waste. Such a distinction would be unnecessary if the two subjects were unrelated to one another.

A look at federal environmental law also demonstrates the close relationship between hazardous and solid waste. The federal Resource Conservation and Recovery Act regulations define "Hazardous waste as a subset of 'solid waste' with characteristics that pose hazards to human health or the environment." William Rodgers Jr., *Environmental Law,* Section 7.8 (1992). "Hazardous waste is a specifically regulated subcategory of waste, in which certain characteristics are met by a discarded material." James T. O'Reilly, State & Local Government Solid Waste Management, Section 1.01, n. 2 (*citing* 42 U.S.C. Section 6921) (1994). What is solid waste and what is hazardous waste, at times, may be a difficult distinction to make. "Waste can slip in and out of the 'hazardous' category ..." Rodgers, at Section 7.8. "The criteria for identifying a 'hazardous waste' have undergone episodic fits and starts ..." *Id.* "The stakes are high in these definitional disputes (refugees from the category of 'haz-

ardous waste' under Subtitle C often reappear as 'solid waste' under Subtitle D, where regulation is much milder) ..." *Id.*

Although there are critical distinctions between solid and hazardous waste, these distinctions do not break the relationship between the two categories of waste. For the majority's reliance on the definition of solid waste to be relevant, there must be language of exclusivity restricting the reach of SB 60 to only solid waste, which is lacking.

Were it our duty to draft the best possible titles for legislation, then I could understand the majority's hesitation to embrace this title. However, that is not our duty. Our duty is to strike down statutes only when the language "clearly and undoubtedly" violates the constitutional limitation. The majority's decision that "relating to solid waste management" implies that the bill does not relate to any other kind of waste is not a plain and ordinary reading of the phrase "relating to." Further, this new construction, when read with our previous opinions addressing these issues, will merely serve to confuse and frustrate the General Assembly as it tries to ascertain just what it is the constitution requires of them.

The majority also appears to criticize the legislature because this amendment was "tacked onto the tail end" of Senate Bill 60 two days before the end of the session. Again, it is not our duty to prescribe procedures for the legislature not already set out in the constitution. This fact is legally irrelevant and we overstep our bounds in making this criticism.

For these reasons, I respectfully dissent.