

# SUPREME COURT OF MISSOURI
## en banc

MISSOURI COALITION FOR            )      *Opinion issued February 4, 2020*
THE ENVIRONMENT AND               )
THOMAS J. SAGER,                  )
                                  )
      Appellants,   )
                                  )
v.                                )      No. SC97913
                                  )
STATE OF MISSOURI,                )
                                  )
      Respondent.   )

**Appeal from the Circuit Court of Cole County**
**The Honorable Patricia Joyce, Judge**

Thomas Sager and the Missouri Coalition for the Environment (collectively, the coalition) appeal the circuit court's grant of summary judgment in the State's favor on the coalition's petition for declaratory and injunctive relief claiming Senate Bill No. 35 (SB 35), now codified at section 34.030, RSMo Supp. 2017,[1] violates the Missouri Constitution in numerous respects. The circuit court properly granted summary judgment.

---

[1] Although SB 35 took effect in 2017, much of the discussion in this opinion concerns the version of section 34.030 in effect prior to the 2017 change. References to section 34.030 and all other statutes, therefore, are to RSMo 2016, unless otherwise stated.

The coalition claims that, by regulating land purchases by both the Missouri Department of Natural Resources (DNR) as well as other state agencies, SB 35 violated the single-subject and clear-title requirements in article III, section 23 of the Missouri Constitution. The single subject of the bill was state purchases of land, which this Court finds was clearly expressed in its title. The coalition also failed to show the bill's original purpose changed prior to final passage in violation of the original-purpose requirement of article III, section 21; the purpose of requiring notice and hearing prior to purchases of land – thereby achieving greater transparency – remained the same. Additionally, there is no merit to the coalition's argument that SB 35 implicitly amended other laws governing DNR and that the full text of those other laws, therefore, should have been set out in the final bill pursuant to article III, section 28. The duties and powers of state agencies, including DNR, often are set out in multiple statutes. The coalition can cite to no case holding that a bill imposing obligations on an agency implicitly amends other statutes regulating that agency and, therefore, must set out the full language of those other statutes.

Finally, summary judgment was proper on the coalition's claim that SB 35 is an invalid special or local law in violation of article III, section 40(30) because it is treated differently from other agencies with the constitutional power to purchase land. Missouri's constitution gives DNR and other constitutionally created agencies separate powers and duties, and Missouri statutes do not offend section 40(30) by treating them differently. Moreover, DNR is a statewide agency and its authority to purchase land after notice and comment pursuant to SB 35 applies to the state as a whole. SB 35 is not a

2

special or local law.  For these reasons, the judgment is affirmed.

## I.    *FACTUAL AND PROCEDURAL BACKGROUND*

Prior to 2017, section 34.030 gave the commissioner of administration authority to "negotiate all leases and purchase all lands, except for such departments as derive their power to acquire lands from the constitution of the state." *§ 34.030.*  As originally introduced, SB 35 repealed this version of section 34.030, replaced it with identical language, and added certain notice and hearing requirements with which the commissioner must comply before purchasing such land.  *2017 Mo. S.B. 35* (as introduced Jan. 4, 2017).

Prior to its enactment, the legislature amended SB 35 by narrowing its notice and hearing requirements to apply only to purchases of land greater than a certain size and by adding DNR to the list of state agencies required to follow the notice and hearing provisions set out in the bill:

> 2. When the commissioner of administration contracts to purchase lands on behalf of any department of state that will be owned and managed by such department **or when the department of natural resources contracts to purchase lands that will be owned or managed by the department of natural resources, and such lands exceed sixty or more acres in a single transaction or such purchase price exceeds two hundred fifty thousand dollars in a single transaction**, the respective department shall:
>
> > (1) Provide public notice on its departmental website and to each publically elected official that represents all or part of the county in which the land to be purchased is located at least sixty days **prior to the department of natural resources purchasing such land** or the commissioner of administration purchasing such land on behalf of a department;
> >
> > **(2) Provide public notice in one newspaper … in every county in which the department of natural resources intends to purchase**

3

> land or the commissioner of administration intends to purchase
> private land on behalf of a department …; and
>
> (3) Hold a public hearing in every county in which **the department
> of natural resources intends to purchase land** or the
> commissioner of administration intends to purchase land on behalf
> of a department.  The department shall provide public notice of the
> public hearing on its departmental website and in writing to each
> publically elected official who represents all or part of the county in
> which the land to be purchased is located …

*§ 34.030.2, RSMo Supp. 2017* (amendments added to the bill in bold).

In May 2018, the coalition filed its suit for declaratory and injunctive relief alleging SB 35 violated several of the Missouri Constitution's procedural requirements for the passage of legislation.  The circuit court granted summary judgment in the State's favor on all counts.  The coalition appeals.  This Court has exclusive appellate jurisdiction over cases involving the validity of state statutes or constitutional provisions. *Mo. Const. art. V, § 3.*

## II.      STANDARD OF REVIEW AND BURDEN OF PROOF

When the issue on appeal is whether a factual question should have precluded summary judgment, this Court "will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Finance Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993).*  This Court "accord[s] the non-movant the benefit of all reasonable inferences from the record." *Id.*  Here, the coalition challenges the passage of SB 35 on the basis that the manner of the bill's passage did not comply with procedural requirements set out in Missouri's constitution governing how bills are to be written and passed.  Because the constitutional validity of a state statute is an issue of law, our review is *de novo. Earth Island Inst. v. Union Elec.*

*Co., 456 S.W.3d 27, 32 (Mo. banc 2015)*. While the procedural requirements of article III are mandatory, not discretionary, "an act of the legislature approved by the governor carries with it a strong presumption of constitutionality." *Hammerschmidt v. Boone Cnty., 877 S.W.2d 98, 102 (Mo. banc 1994)*. "Therefore, this Court interprets procedural limitations liberally and will uphold the constitutionality of a statute against such an attack unless the act clearly and undoubtedly violates the constitutional limitation." *Id.*

## III. SB 35 MET CONSTITUTIONAL PROCEDURAL REQUIREMENTS

The coalition asserts SB 35 violates sections of the Missouri Constitution limiting the manner in which the legislature may pass legislation by requiring that bills have a single subject clearly expressed in the title of the bill as passed, that the section being amended be fully set forth with the amendments clearly marked, and that the bill's original purpose not be changed. *See Mo. Const. art. III, §§ 21, 23, 28*. These limitations are designed to prevent surprise or deception of legislators and the public as to the purpose, subject, and effect of the proposed legislation. *Calzone v. Interim Comm'r of the Dep't of Elementary & Secondary Educ., 584 S.W.3d 310, 315-17 (Mo. banc 2019)*. They also are intended to prevent legislative logrolling – a process combining unrelated amendments that on their own could not pass but together may muster a majority. *Hammerschmidt, 877 S.W.2d at 101*.

Applying these provisions to SB 35, the coalition notes that, prior to its repeal and replacement in 2017, section 34.030 provided that the commissioner "shall negotiate all leases and purchase all land, except for such departments as derive their power to acquire lands from the constitution." The commissioner's purchasing power, therefore, did not

5

extend to the three Missouri state government agencies – DNR, the state highways and transportation commission, and the department of conservation – that "derive their power to acquire lands from the constitution."[2] The coalition argues the legislature violated article III, sections 21, 23, and 28 by expanding the scope of section 34.030 to include DNR's land purchases because that expansion caused SB 35 to address more than a single subject, that subject was not clearly expressed in the bill's title, and the purpose of the bill changed when DNR was added. This Court will address each of these constitutional provisions in turn.

### A. SB 35 Did Not Violate Article III, Section 23's Single-Subject Requirement

Section 23 of article III provides, in relevant part: "No bill shall contain more than one subject which shall be clearly expressed in its title …." SB 35's final title was "An act to repeal section 34.030, RSMo, and to enact in lieu thereof one new section relating to state purchases of land." The coalition argues land purchases by the commissioner are a different subject from land purchases by DNR because the constitution gives DNR the constitutional authority to purchase land itself. *Mo. Const. art. IV, § 47(a).* Therefore,

---

[2] *See e.g. Mo. Const. art. IV, § 47(a)* (A sales tax is imposed for DNR to fund the "acquisition, development, maintenance and operation of state parks and state historic sites in accordance with Chapter 253, RSMo …."); *§ 253.040* ("[DNR] is hereby authorized to accept or acquire by purchase, … any lands, or rights in lands, sites, objects or facilities which in its opinion should be held, preserved, improved and maintained for park or parkway purposes."); *Mo. Const. art. IV, § 41* ("[Department of conservation] may acquire by purchase … all property necessary, useful or convenient for its purposes …."); *Mo. Const. art. IV, § 30(c)* ("The highways and transportation commission shall have authority to plan, locate, relocate, establish, acquire, construct, maintain, control, and as provided by law to operate, develop and fund public transportation facilities ….").

the coalition says, a bill that imposes notice and hearing requirements on other agencies cannot also impose such requirements on DNR without violating the single-subject requirement. The Court rejects this argument.

Missouri law long has recognized that the test for whether a bill addresses a single subject is *not* how the provisions relate to each other, but whether the provisions are germane to the general subject of the bill. *C.C. Dillon Co. v. City of Eureka, 12 S.W.3d, 322, 328 (Mo. banc 2000)*; *accord State v. Mathews, 44 Mo. 523, 527 (Mo. 1869)*. The provisions of the bill will be found germane to a single subject if "all provisions of the bill fairly relate to the same subject, have a natural connection therewith or are incidents or means to accomplish its purpose." *Hammerschmidt, 877 S.W.2d at 102*. When determining the subject, this Court will first look at the title of the bill, and "[t]o the extent that the bill's original purpose is properly expressed in the title to the bill, [the Court] need not look beyond the title to determine the bill's subject." *Id.* In determining whether this standard is met, this Court will look only at the bill as finally enacted. *Mo. State Med. Ass'n v. Mo. Dep't of Health, 39 S.W.3d 837, 841 (Mo. banc 2001)*; *Stroh Brewery Co. v. State, 954 S.W.2d 323, 327 (Mo. banc 1997)*.

As finally passed, SB 35's title was "An act to repeal section 34.030, RSMo, and to enact in lieu thereof one new section relating to state purchases of land." The title reveals the single subject of the bill is "state purchases of land." A review of the content of the bill shows that its provisions all relate to this single subject – its provisions include placing a notice of intent to purchase on the agency's website, sending notice to elected officials, and holding public hearings about the land purchase, among other notice-related

7

requirements. *Id.* Every provision of SB 35 is germane to state land purchases and has a "natural connection with and [is] incidental to accomplishing [a] single purpose," *West Crown Plaza Hotel Co. v. King, 664 S.W.2d 2, 6 (Mo. banc 1984)*, whether that agency is DNR or some other state agency, and whether the commissioner makes the purchase on its behalf or the agency does so directly. Because "[n]o person reading this title would misapprehend its real meaning or be misled as to the subject," *Mathews, 44 Mo. at 528*, the provisions relate to a single subject. *West Crown Plaza, 664 S.W.2d at 6.*

### B. SB 35 Has a Clear Title

For similar reasons, this Court rejects the coalition's argument that SB 35's subject is not clearly reflected in its title. The coalition argues SB 35's title is deceptive and misleading because, prior to 2017, section 34.030 did not regulate land purchases by DNR and the bill title failed to provide notice that, thereafter, it would. This argument ignores the nature of the clear-title requirement.

The clear-title requirement "necessarily applies to the version of the bill that passed, not the introduced version." *C.C. Dillon Co., 12 S.W.3d at 329.* The test for whether a title is clear is simply whether it indicates generally the subject of the bill. *St. Louis Health Care Network v. State, 968 S.W.2d 145, 147 (Mo. banc 1998).* The title cannot be so broad as to obscure the contents or render the single-subject requirement meaningless. *Id.* Neither can a title be so narrow or underinclusive that it describes certain particulars or details of the act rather than its broader subject with the result that some provisions of the act do not conform to the restrictions listed in its title. *Nat'l Solid Waste Mgmt. Ass'n v. Dir. of Dep't of Nat. Res., 964 S.W.2d 818, 821 (Mo. banc 1998).*

8

As an example, *Health Care Network, 968 S.W.2d at 146*, found the title "certain incorporated and non-incorporated entities" was too broad because it could describe any legislation that "affects, in any way, businesses, charities, civic organizations, governments, and government agencies." *Id. at 148.* By contrast, *National Solid Waste Management, 964 S.W.2d at 822*, found the title "relating to solid waste management" was unconstitutionally underinclusive because solid waste was a specific topic but the bill also encompassed sections pertaining to hazardous waste, which is distinct from solid waste.

When a title is neither overly broad nor underinclusive, this Court will find it complies with the clear title requirement. For example, in *Missouri State Medical, 39 S.W.3d at 841,* this Court approved the title "relating to health services" because the bill, in fact, involved health care services and that description was sufficiently specific to describe the subject of the bill without becoming too detailed.

The title at issue here – a bill "relating to state purchases of land" – accurately describes the subject addressed in the bill. It is not overbroad as in *Health Care Network.* Contrary to the coalition's argument in this Court, neither is it underinclusive as in *National Solid Waste Management* merely because the title does not specifically name DNR. The title "state purchases of land" is descriptive of the bills' subject – purchases of land by state agencies. DNR is a state agency. That prior versions of section 34.030 did not include DNR among the state agencies regulated does not make the title's description of its subject inaccurate. Nothing in the clear-title requirement necessitates a title name any state agency that will become subject to a bill's provisions any more than it requires

the title to list every new duty imposed on agencies already subject to the prior version of the statute.

Indeed, the opposite is true – naming DNR in the title without naming the other agencies affected by the bill would risk making the bill's title underinclusive as it could cause the title to list only some particulars or details of the act and could mislead the reader into believing the bill covered only those particulars listed. *See National Solid Waste Management, 964 S.W.2d at 821.* A title avoids being underinclusive or too amorphous by stating the overall subject of the bill more generally in a manner that encompasses the act's subject as a whole. Here, "state purchases of land" states a clearly expressed "broad umbrella category" that includes every topic in the bill. *Jackson Cnty. Sports Complex Auth. v. State, 226 S.W.3d 156, 161 (Mo. banc 2007)*. SB 35 meets the clear-title requirement.

### C. SB 35 Does Not Violate the Original-Purpose Requirement

The coalition also claims SB 35 violates section 21 of article III, which provides "No law shall be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose." The coalition argues the amendments to SB 35 as it passed through the legislature violated this requirement because the bill as first proposed did not regulate DNR but as passed did insert notice and hearing requirements for certain land purchases by DNR. This change to include DNR, an agency constitutionally authorized to purchase land itself, constituted a change in purpose, the coalition argues.

While the coalition is correct that the bill as first introduced did not impose

10

requirements on DNR, the subsequently added requirements did not change the bill's original purpose. Original purpose is "the general purpose of the bill, not the mere details through which and by which that purpose is manifested and effectuated." *Calzone, 584 S.W.3d at 317.* The Court compares the purpose of the bill as first introduced with the bill as finally passed. *Id. at 318.* "[A] bill's original purpose is not limited to what is stated in the bill's original title ...." *Id.* (alterations in original)*; Jackson Sports Complex, 226 S.W.3d at 160.* To the contrary, "[a]lterations that bring about an extension or limitation of the scope of the bill are not prohibited." *Calzone, 584 S.W.3d at 317* (alteration in original)*; Stroh Brewery, 954 S.W.2d at 326.* For these reasons, "this Court rarely has invalidated legislation based upon an original purpose challenge." *Calzone, 584 S.W.3d at 317.*

Here, the bill's original purpose was to impose more notice and hearing requirements on state land purchases, and the final purpose remained the same – to have more notice and hearings regarding such purchases than previously had been provided, a purpose the State describes as "increasing transparency" of the land purchasing process. Extending the reach of those notice and hearing provisions to include DNR necessarily furthered, rather than changed, that purpose.

The coalition argues that, were transparency of land purchases the original purpose of the bill, the word "transparency" would be in the bill's title, and it is not. And assuming transparency was a part of the bills' original purpose, the coalition argues the purpose of adding DNR land purchases to the bill's scope was to make those purchases more cumbersome and difficult, due to an animus against DNR, not to increase

11

transparency. There are at least two problems with this argument.

First, this Court determines a bill's purpose from the nature of the bill's provisions, not from its title, as "the Constitution does not require that the original purpose be stated anywhere, let alone in the title …." *Mo. State Med., 39 S.W.3d at 839*. And, as just discussed, that title can change as the bill progresses. *Calzone, 584 S.W.3d at 317*. Indeed, expanding a bill's title "to reflect the commonality of all the subjects contained in the bill is not a novel proposition. It is the process the legislature has routinely used to accommodate amendments to a bill …." *Id. at 318.*

Second, the coalition's argument as to why DNR was made subject to the bill confuses the purpose of the legislation with the legislature's alleged motive in passing the bill. A bill is not made invalid because of an allegedly bad or secret motive, if it otherwise has a single subject clearly expressed in its title and its purpose does not change during the course of its legislative journey. Here, the subject of the bill was land purchases by the State, that subject is clearly expressed in its title, and the purpose of the bill as first proposed did not change with the addition of DNR.[3]

### D. SB 35 Was Not Required to Set Out in Full Other Statutes Regulating Land Purchases by DNR

Section 28 of article III provides:

> No act shall be amended by providing that words be stricken out or inserted, but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended.

---

[3] Transparency is not an unusual purpose for passage of a Missouri statute. *See, e.g., § 610.010, et seq, RSMo 2016* (Missouri's sunshine law).

The coalition argues SB 35 violates this provision because it does not set out in full the words of the other statutory sections addressing DNR's authority. Yet, the coalition argues, adding a notice and hearing requirement to DNR land purchases must necessarily affect those sections because it adds requirements not now in place. Therefore, even though the new legislation does not impose duties on DNR that conflict with those in existing law, the coalition argues SB 35 should be considered as if it amended existing statutes governing DNR land purchases. This means that, to comply with the requirement that statutory amendments be set out "together with the act or section amended … in full as amended," the text of SB 35 should have, but did not, set out the text of each of these existing statutes, the coalition argues.

Not surprisingly, the coalition cites no authority for this argument because it is inconsistent with prior case law. "The fact that [a statute] has consequences for other statutes does not bring it into conflict with [article] III, sec[tion] 28." *C.C. Dillon Co., 12 S.W.3d at 330* (first alteration in original); *Boyd-Richardson Co. v. Leachman, 615 S.W.2d 46, 53 (Mo. banc 1981).* The purpose of section 28 is not to make every new statute dozens or hundreds of pages long by reprinting every existing law that touches on the subject of the new legislation. Rather, the purpose of section 28 is to avoid confusion and to ensure the legislature knows the content and effect of the amended law. *Id. at 327.* SB 35 did just that. SB 35 set out how the law would read if enacted by highlighting the new provisions, thereby preventing confusion and demonstrating the legislature was

aware of how section 34.030 would change after adoption of SB 35.[4]

## IV. SECTION 40(3)'S PROHIBITION AGAINST SPECIAL LAWS DOES NOT APPLY TO LAWS APPLICABLE TO THE STATE AS A WHOLE

The coalition's final argument is a question of law, which this Court determines *de novo*. *ITT Commercial, 854 S.W.2d at 376.* It argues SB 35 is an unconstitutional special law under article III, section 40(30). Article III, section 40(30) states, in relevant part: "The general assembly shall not pass any local or special law … where a general law can be made applicable." This means any party challenging a statute under this provision must prove both the statute is local or special, and a general law could have been made applicable. *City of Aurora, Mo. v. Spectra Commc'n Grp., LLC, d/b/a/ CenturyLink, No. SC96276, __ S.W.3d ___, at \*11 (Mo. banc Dec. 24, 2019).* *Aurora* held "if the line drawn by the legislature is supported by a rational basis, the law is not local or special and the analysis ends." *Id. at \*18.*

This argument by the coalition is in some ways the inverse of its earlier argument that, as amended, section 34.030 improperly included DNR within its scope along with other state agencies. Here, the coalition argues section 34.030 as replaced violates article III, section 40(30) because it does not *also* include the highways and transportation commission and department of conservation within its scope. The coalition argues DNR,

---

[4] The Court also notes that, because SB 35 repealed and replaced rather than merely amended section 34.030, it is questionable whether the changes had to be set forth in full. *See, e.g., State v. Murlin, 38 S.W. 923, 924 (Mo. 1897)* (amending a statutory provision is different from repealing and replacing a statutory provision)*; State ex. rel. K.D. v. Saitz, 718 S.W.2d 237, 240 (Mo. App. 1986)* ("[Section 28] does not apply to the express repeal of a section and the enactment of new sections which are in lieu of the repealed

14

the department of conservation, and the highways and transportation commission are of the same class because they all derive their land-purchasing authority from the constitution; therefore, the law is special because it does not apply to all members of the same class even though the legislation could have been extended to apply to these other constitutional agencies.

This Court rejects this argument for multiple reasons. First, although these agencies share common goals in conserving and overseeing management of state resources, each agency is nonetheless tasked with distinct and separate purposes that do not overlap with each other and, potentially, could at times be at odds with one another in regard to uses of particular land. That may be one reason why the constitution created them as different agencies in the first instance; if their purposes were identical, their duties would all have been combined in a single agency. But those duties were not combined because the people, in adopting the constitution, and the legislature, in adopting governing statutes, recognized that each agency plays a related, but different, role in the government of Missouri.

For example, the department of conservation is tasked with management and regulation of all of the state's bird, fish, game, forestry, and wildlife resources. *Mo. Const. art. IV, § 40(a).* By contrast, Missouri's constitution charges DNR with the duty to provide "environmental control and the conservation and management of natural resources" – including the state's park system. *Mo. Const. art. IV, § 47; § 253.022.* Yet

---

section.").

a third purpose is served by Missouri's highways and transportation commission; it oversees the state highway system and state transportation programs and facilities. *Mo. Const. art. IV § 29.* As this Court noted in *Murray v. Missouri Highways and Transportation Commission, 37 S.W.3d 228 (Mo. banc 2001)*, in rejecting a similar special law challenge to a statutory framework that applied only to the highways and transportation commission and not to local agencies with authority over local road systems, "[w]hile other entities have responsibility for certain roads, there is no other entity similarly situated to the [highways and transportation] commission" as "no other entity has authority over all state transportation programs and related facilities …." *Id. at 237.* Similarly, while DNR, the department of conservation, and the highways and transportation commission may all be involved in regulating state land, our constitution has given each a specific focus that distinguishes it from the others. By enacting a statute that affects one but not the other two of these state agencies, the legislature has not improperly treated members of the same class differently for these purposes.

Were it otherwise, and were the legislature required to treat each state agency alike in passing legislation merely because the constitution or laws give each duties relating to land, or other potentially overlapping types of powers, then the many dozens of other statutes governing and regulating these three agencies would be suspect as special legislation as well, for each agency is necessarily subject to laws applicable only to its performance of its constitutional and statutory duties. The coalition's challenge here fails because DNR is unique and no other agency has authority over the same natural resources as it does.

16

There is another equally fundamental flaw in the coalition's argument. Article III, section 40 was born out of a need to prevent the legislature from enacting laws that granted or denied rights and privileges to individuals, localities, or special groups. *Jefferson Cnty. Fire Prot. Dists. Ass'n v. Blunt, 205 S.W.3d 866, 868 (Mo. banc 2006), overruled on other grounds by City of Aurora, No. SC96276, __ S.W.3d at \*21.* That was necessary because, prior to the adoption of article III, section 40, up to 87 percent of bills passed by the General Assembly did not focus on statewide legislation but rather were laws addressing special or local issues such as acts to divorce couples, validate invalid marriages, change interest rates for individual banks, and alter judicial proceedings in individual cases, among other personal whims of the legislators. *Id. at 868-69.*[5]

DNR, by contrast, as *Murray* noted, is a department of the state that operates statewide and was itself created by the Missouri Constitution. *37 S.W.3d at 237.* SB 35 applies to all its land purchases across the state. "Special legislation refers to statutes that apply to localities rather than to the state as a whole and statutes that benefit individuals rather than the general public." *Jefferson Cnty., 205 S.W.3d at 868.* For this reason, *State ex. inf. Danforth ex rel. Farmers' Electric Co-op., Inc. v. State Environmental Improvement Authority, 518 S.W.2d 68, 75 (Mo. banc 1975),* found the special laws prohibition inapplicable to an act creating an environmental control authority "to provide

---

[5] For further background about the history of the special laws provision, see Robert M. Ireland, *The Problem of Local, Private, and Special Legislation in the Nineteenth-Century United States*, 46 Am. J. Legal Hist. 271, 271 (2004), and Christopher L. Thompson, Note, *Special Legislation Analysis in Missouri and the Need for Constitutional Flexibility*, 61 Mo. L. Rev. 185, 192 (1996).

17

for the conservation of the air, land and water resources of the state" because "[t]he law, being statewide in application, is neither local nor special. … No special privilege has been conferred upon one group to the exclusion of others." *Id.* The prohibition against special and local laws inherently does not apply to laws such as that in *Danforth* that affect a state agency's statewide operations. Section 34.030, RSMo Supp. 2017, similarly is a general law that applies equally throughout the state to the operation of a state agency, not to individuals, special groups, or localities.

## V. CONCLUSION

For the reasons set forth above, the circuit court's judgment is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

All concur.

18